# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHILD TRENDS, INCORPORATED et al., *Plaintiffs*, v. UNITED STATES DEPARTMENT OF EDUCATION et al., *Defendants*. | Case No. 8:25-cv-01154-BAH |

## PLAINTIFFS' RESPONSE TO LETTER ORDER

Plaintiffs appreciate the Court's attention to this matter, and respectfully submit that the Court should not stay this case pending a Supreme Court decision in *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025). As a threshold matter, *California* is not pending before the Supreme Court. The TRO has ended, the appeal has been dismissed, and district court proceedings are ongoing. Neither the Supreme Court nor the Fourth Circuit will provide guidance on the Tucker Act any time soon.

More fundamentally, this case presents a unique category of claims that were not addressed by the Supreme Court in *California* or by the Fourth Circuit in *Ass'n of College for Tchr. Educ.* ("*AACTE*") *v. McMahon*, No. 25-1281 (4th Cir.). Plaintiffs bring statutory "Program Claims" that, in direct contrast to the claims in *California* and *AACTE*, do *not* challenge the terminations of Plaintiffs' awards and do *not* seek to restore those awards. The claims challenge Defendants' decisions not to operate the statutory programs, and seek to require Defendants to operate the programs, which would allow Plaintiffs to compete for new awards. The Program Claims do not concern any executed agreement and therefore cannot be subject to the Tucker Act. At a minimum, the Court should rule promptly on the Program Claims.

Plaintiffs also bring separate "Termination Claims" that do challenge the termination of their awards and seek their restoration. This second category of claims admittedly do resemble the claims in *California* and *AACTE*, but unlike in those cases, Plaintiffs assert constitutional and *ultra vires* challenges to the terminations, not APA claims. That distinction is critical because the issue in *California* and *AACTE* was the APA's sovereign immunity waiver and sovereign immunity is not an issue for constitutional or *ultra vires* claims. The government has *admitted* in other cases that its Tucker Act defense does not apply to such claims. The constitutional claims

also present a unique issue not yet presented to the Supreme Court or the Fourth Circuit: *Webster v. Doe*'s clear statement rule for depriving district court of jurisdiction for constitutional claims.

The chart below summarizes the claims in this case versus in *California* and *AACTE*.

|  | Action Challenged | Relief Sought | Type of Claims |
|---|---|---|---|
| *California* and *AACTE* | Termination of the plaintiffs' grants | Restoration of the plaintiffs' grants | APA |
| *Child Trends* Program Claims | Decisions to not operate statutory programs or spend appropriations | Operation of programs and opportunity to compete for new awards | APA, Constitutional, ultra vires |
| *Child Trends* Termination Claims | Termination of Plaintiffs' grants | Restoration of Plaintiffs' grants | Constitutional, ultra vires |

Plaintiffs note that 28 U.S.C. § 1657(a) requires courts to expedite ruling on preliminary injunctions, and time is of the essence here because money Congress appropriated for the Comprehensive Centers program expires in September. A stay would thus moot Plaintiffs' claims, in part, since Plaintiffs seek to compel Defendants to spend the funds before they expire. Plaintiffs bring serious claims, and win or lose, should receive a ruling. But if the Court grants a stay, Plaintiffs ask the Court to also deny the preliminary injunction for purposes of an appeal.

A. **There Is No Guidance Forthcoming from the Supreme Court or Fourth Circuit**

In *California*, the Supreme Court granted a stay pending appeal of the district court's TRO. 145 S. Ct. at 969. The Court stayed the TRO "pending the disposition of the appeal in the … First Circuit" and a "petition writ of certiorari," if one were "timely sought." *Id.* The plaintiffs thereafter withdrew their motion for a preliminary injunction, No. 1:25-cv-10548, ECF No. 89 (D. Mass. Apr. 8, 2025), and parties agreed to dismiss the TRO appeal, No. 25-1244, Judgment (Apr. 23, 2025). District court proceedings are ongoing. Thus, there is no appeal before the Supreme Court, which may never hear the case. Similarly, in *AACTE*, no party has sought to

expedite the preliminary injunction appeal and briefing will close in mid-August. No. 25-1281, May 7, 2025 Order. The case will be argued in the fall or winter and likely decided months after. A stay pending higher court guidance would mean this case is stayed indefinitely, likely to 2026.

### B. The Program Claims Are Wholly Different from the *California* and *AACTE* Claims

A stay is also not warranted on the merits because Plaintiffs' statutory Program Claims are fundamentally different from the claims in *California* and *AACTE* and have not been addressed by the Supreme Court or Fourth Circuit. The Program Claims challenge the following government actions: (1) Defendants' refusal to operate the Comprehensive Centers and Regional Educational Laboratories (REL) programs, which Congress required be operated for specific purposes through 20 grants and 10 contracts; and (2) the Department's refusal to spend funds appropriated for the Comprehensive Centers. The relief sought through the Program Claims is that the Department maintain the required number of Comprehensive Centers and RELs (and spend all the appropriations), which will allow Plaintiffs to *compete* for new awards. With the Program Claims, Plaintiffs do *not* challenge the termination of their prior grants or subcontracts, do *not* ask the Court to restore the grant or subcontracts, and do *not* seek any payments under the grants or subcontracts.

In contrast, the actions challenged in *California* (and *AACTE*) were the termination of grants, and the relief sought was to restore the terminated grants. *California*, No. 1:25-cv-10548, ECF Nos. 1, 41. At the Supreme Court, the Solicitor General emphasized that the relief sought was "to cancel the terminations, pay money due, and reinstate the [grants]." App. to Vacate at 3, No. 24A910. Although the plaintiffs argued that the source of their rights was the statutes creating the programs, the challenged conduct and the relief sought were tied to the grants they held, not the statutory obligations. Consequently, the Solicitor General argued that the "ultimate

3

source of the grantees' asserted right to payment is the [terminated] grant[s]," "not the grantmaking statutes." *Id.* at 16. In turn, the *California* majority stressed that the TRO was "to enforce a contractual obligation to pay money." 145 S. Ct. at 968. In other words, the government argued and the Court preliminarily agreed that the plaintiffs were ultimately seeking to enforce a contract and get paid under a contract.

The Program Claims here, however, are not based on any contractual relationship and do not seek to enforce any contractual obligation, to pay money or otherwise. The government's argument in all the grant termination cases is that the claims are subject to the Tucker Act because the grants "meet the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *See Global Health Council v. Trump*, No. 1:25-cv-00402, ECF No. 80 at 6 (D.D.C. May 2, 2025). But the Program Claims do not relate to any executed grant or contract. They are not based on any agreement for which there was "offer," "acceptance," and so on. These Program Claims could have been brought by any entity with a reasonable chance of competing for new awards, regardless of whether that entity ever had an executed grant. The Tucker Act cannot apply where there is no "actual contract" underlying the legal claims. *Hatzlachh Supply Co. v. United States*, 444 U.S. 46, 465 n.5 (1980).

An ongoing case regarding the U.S. Agency for Global Media (USAGM) illustrates that there is no plausible argument that the Tucker Act applies to Plaintiffs' Program Claims. The district court there enjoined the agency to restore terminated grants and to "restore [Voice of America] programming such that USAGM fulfills its statutory mandate." *Widakuswara v. Lake*, 2025 WL 1166400, at *18 (D.D.C. Apr. 22, 2025). A D.C. Circuit panel did *not* stay the programming portion of the injunction, even while it stayed the grant termination portion (the en

4

banc court has since administratively stayed that stay). No. 25-5144 (D.C. Cir.). This Court should at least resolve Plaintiffs' Program Claims.

### C. Plaintiffs' Nonstatutory Termination Claims Were Not In *California* or *AACTE*

The Court should also rule on Plaintiffs' Termination Claims, because these are constitutional and *ultra vires* claims. *California* and *AACTE* involved only APA claims, and the government's defense and the Supreme Court's order was specific to the APA—that the APA's sovereign immunity waiver did not apply because the Tucker Act "impliedly forbids" those APA claims. 5 U.S.C. § 702. The government has conceded elsewhere that its Tucker Act argument *does not apply* to constitutional and *ultra vires* claims. *See* Ex. A at 87. That is because "sovereign immunity does not apply when a plaintiff files suit seeking equitable relief against federal officials . . . alleging that those officials exceeded the scope of their authority and/or acted unconstitutionally." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022).

There is another key difference between Plaintiffs' constitutional claims and the APA claims in *California* and *AACTE*: because Plaintiffs could not assert these constitutional claims in the Court of Federal Claims (PI Reply 5), the Supreme Court's holding in *Webster v. Doe*, 486 U.S. 592, 603 (1988) requires the government to show a "clear" statement that Congress intended to provide no judicial forum for these constitutional claims. Neither the Supreme Court nor the Fourth Circuit has yet addressed how *Webster* impacts the government's Tucker Act defense. Thus, if the Court grants a stay, some other later-filed case will make the law on this question that will bind Plaintiffs. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Plaintiffs respectfully submit that they should not suffer that fate here.

May 12, 2025                                        Respectfully submitted,

<div style="margin-left:3em">

/s/Daniel F. Jacobson
Daniel F. Jacobson
Lynn D. Eisenberg*
Kyla M. Snow**
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

\* Of Counsel

\** Not admitted in the District of Columbia. Practice limited to matters before U.S. courts. (admitted *pro hac vice*)

*Counsel for Plaintiffs*

</div>

6