| | |
|---|---|
| **From:** | Washington, Mark |
| **To:** | Robin Jarvis |
| **Cc:** | Ryder, Ruth; Hoffman, Amanda; Weems, Kia; Williams, Damien |
| **Subject:** | GRANT AWARD TERMINATION: S283B240029_RMC_RESEARCH_CORP.pdf |
| **Date:** | Wednesday, February 19, 2025 4:35:33 PM |
| **Attachments:** | S283B240029_RMC_RESEARCH_CORP.pdf |
| | image001.png |

Dear Federal Grant Project Director,

Please see the attached letter, informing you of the U.S. Department of Education's decision to terminate your federal grant award, because the grant is now inconsistent with, and no longer effectuates, the Department's priorities.  You will receive an updated GAN notice following this email, confirming the decision and change.  You will also receive notification from the Department's G5 grants administration system.

Please also note the basis for challenge or appeal of this decision, as well as the deadline to respond, as noted in the language of the attached letter. Kindly contact my colleague, Dr. Amanda Hoffman, at Amanda.Hoffman@ed.gov, with any related questions or concerns about this information or the appeals process overall.

Respectfully,


Mark Washington

_____



**Mark Washington**
**Deputy Assistant Secretary**
United States Department of Education
Office of Elementary and Secondary Education
400 Maryland Avenue, SW | Washington, D.C. 20202
Phone: (202) 205-0167 | Mobile: (202) 549-9956  |  Email: mark.washington@ed.gov



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SECONDARY AND ELEMENTARY EDUCATION
OFFICE OF ADMINISTRATION

2/19/2025

Robin  Jarvis
Project Director
RMC RESEARCH CORP
3550 Buschwood Park Drive
Suite 270
Tampa, FL 33618

RE: Grant Award Termination

Dear  Robin  Jarvis    :

This letter provides notice that the United States Department of Education is terminating your federal award,  S283B240029    . *See* 2 C.F.R. § 200.340-43; *see also* 34 C.F.R. § 75.253.

It is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States. The Acting Secretary of Education has determined that, per the Department's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives or any other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic. Illegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education. In addition to complying with the civil rights laws, it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4); *see also* 34 C.F.R. § 75.253. Therefore, pursuant to, among other authorities, 2 C.F.R. § 200.339-43, 34 C.F.R. § 75.253, and the termination provisions in your grant award, the Department hereby terminates grant No.  S283B240029    in its entirety effective   2/19/2025    .

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 000852

If you wish to object to or challenge this termination decision, you must submit information and documentation supporting your position in writing within 30 calendar days of the date of this termination notice.  Objections and challenges must be sent by email and first-class mail and addressed to the component head that oversees the grantmaking unit, which will typically be the Assistant Secretary of that unit. In this case, please address your objection or challenge to Ruth Ryder, Acting Assistant Secretary; Office of Elementary and Secondary Education; 400 Maryland Ave., SW; Washington, D.C. 20202; ruth.ryder@ed.gov.

Your appeal should contain the following:
1. a copy of the written notice of termination;
2. the date you received written notice of termination;
3. a brief statement of your argument and the disputed factual, legal, or other issues;
4. the amount of funds or costs in dispute, if any; and
5. any other relevant documents.

*See id.* § 200.342.

Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g). Failure to do so will result in the Department filing a report documenting your "material failure to comply with the terms and conditions of" this award on SAM.gov and taking any other appropriate enforcement actions. *See id.* § 200.344(i).

Finally, you are reminded of your duties under your agreement and Department of Education guidance regarding retention of grant records for at least three years.

Respectfully,

Mark Washington
Deputy Assistant Secretary for Management and Planning

cc: Ruth Ryder

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 000853

S283B240029

Robin Jarvis

RMC Research Corporation

3550 Buschwood Park Drive

Suite 270

Tampa, FL 33618

ED 000854

S283B240029

Everett Barnes
RMC Research Corporation
3550 Buschwood Park Drive
Suite 270
Tampa, FL 33618

S283B240029



## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| 1 | RECIPIENT NAME | 2 | AWARD INFORMATION |
|---|---|---|---|

**1   RECIPIENT NAME**

RMC Research Corporation
3550 Buschwood Park Drive
Suite 270
Tampa, FL 33618

**2   AWARD INFORMATION**

PR/AWARD NUMBER     S283B240029
ACTION NUMBER       2
ACTION TYPE         Administrative
AWARD TYPE          Discretionary

**3   PROJECT STAFF**

RECIPIENT PROJECT DIRECTOR
  Robin Jarvis                (813) 915-0010
  jarvis@rmcres.com
EDUCATION PROGRAM CONTACT
  Sarah M Zevin               (202) 260-8363
  sarah.zevin@ed.gov
EDUCATION PAYMENT HOTLINE
  G5 PAYEE HELPDESK      888-336-8930
  obssed@servicenowservices.com

**4   PROJECT TITLE**

84.283B
The Region 6 Comprehensive Center

**5   KEY PERSONNEL**

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Robin Jarvis | Project Director | 75 % |
| Heidi Goertzen | Co-Deputy Director | 50 % |
| Jack Schwarz | Co-Deputy Director | 50 % |
| Everett Barnes | Principal Investigator | 30 % |

**6   AWARD PERIODS**

BUDGET PERIOD          10/01/2024 - 02/19/2025
PERFORMANCE PERIOD     10/01/2024 - 02/19/2025

FUTURE BUDGET PERIODS

N/A

**7   AUTHORIZED FUNDING**

THIS ACTION                     N/A
BUDGET PERIOD          $2,450,688.00
PERFORMANCE PERIOD     $2,450,688.00

**8   ADMINISTRATIVE INFORMATION**

UEI              K2GWCKB1JCE4
REGULATIONS      CFR PART x
                 EDGAR AS APPLICABLE
                 2 CFR AS APPLICABLE
ATTACHMENTS      N/A

**9   LEGISLATIVE AND FISCAL DATA**

AUTHORITY:            PL X X X
PROGRAM TITLE:        COMPREHENSIVE REGIONAL ASSISTANCE CENTERS
CFDA/SUBPROGRAM NO:   84.283B

S283B240029

# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**10**

| | |
|---|---|
| PR/AWARD NUMBER: | S283B240029 |
| RECIPIENT NAME: | RMC Research Corporation |
| GRANTEE NAME: | RMC RESEARCH CORP |
| | 1000 MARKET ST UNIT 2, |
| | PORTSMOUTH, NH 03801 - 3358 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 80.4% |

TERMS AND CONDITIONS

(1) THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION.

(2) The grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. 200.340(a)(4); see also 34 C.F.R. 75.253.

LAVANNA WEEMS  Digitally signed by LAVANNA WEEMS
Date: 2025.02.19 18:40:28 -05'00'

**AUTHORIZING OFFICIAL**                    **DATE**

Ver. 1

ED 000857

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**        (See Block 2 of the Notification)

**1. RECIPIENT NAME –** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION –**  Unique items of information that identify this notification.

    **PR/AWARD NUMBER –**  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER –**  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE –**  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE –**  The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF –**  This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR –**  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT –**  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT –**  The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER –** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL –** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS –**  Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD –**  A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD –**  The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS –**  The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING –**  The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION –** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD –** The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD –** The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE –**  The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT –** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION –**  This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI –**        The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

ED 000858

**\*REGULATIONS –**  Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS –**  Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA –**  The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS –**
The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award.

**AMOUNT –**  The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS –**  Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER –**  The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME –**  The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE –**  The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE –**  The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL –**  The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award


**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF –**  The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT –**  The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT –**  The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT –**  The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE –**  If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

| | |
|---|---|
| **From:** | Ryder, Ruth |
| **To:** | Hoffman, Amanda; Bradley, Renee |
| **Subject:** | FW: Appeal Letter from RMC Research Corporation – Region 6 – Gulf States CC |
| **Date:** | Wednesday, March 12, 2025 11:29:25 AM |
| **Attachments:** | Appeal Letter from RMC Research Corp_Region 6_ Gulf States CC.pdf |
| **Importance:** | High |

---

**From:** Everett Barnes <ebarnes@rmcres.com>
**Sent:** Wednesday, March 12, 2025 11:11 AM
**To:** Ryder, Ruth <Ruth.Ryder@ed.gov>
**Subject:** Appeal Letter from RMC Research Corporation – Region 6 – Gulf States CC
**Importance:** High

You don't often get email from ebarnes@rmcres.com. Learn why this is important

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

### RMC Attachments Disclaimer

Think twice before clicking on links or opening attachments. If you are not expecting an attachment, contact the sender before opening it.

As always, you can ask RMC Research Help Desk.

---

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.

**RMC Research Corporation**
1000 Market Street, Building 2
Portsmouth, NH 03801

Phone: 603.422.8888, 800.258.0802
Fax: 603.436.9166
www.RMCResearchCorporation.com

Dr. Ruth Ryder
Acting Assistant Secretary
Office of Elementary and Secondary Education
400 Maryland Ave. SW
Washington, DC 20202

Reference:  Grant Award Termination Notice:
            S283B240029_RMC_Research_ Corp.pdf
            Received: Wednesday, February 19, 2025
            2:39:26 PM

Dear Dr. Ryder,

RMC Research Corporation acknowledges receipt of the Grant Award Termination Notice for:
S283B240029 – Region 6 Comprehensive Center – Gulf States Region, serving Florida,
Mississippi and Alabama, received from Mr. Mark Washington, Deputy Assistant Secretary,
OESE, US Department of Education, dated February 19, 2025. With this appeal, RMC Research
is seeking reinstatement of the five-year award. The amount of funds in dispute are as follows.
The total five-year grant award amount is $12,253,440. By fiscal year, the grant amounts are:
FY2025 $2,450,688; FY2026 $2,450,688; FY2027 $2,450,688; FY2028 $2,450,688; FY2029
$2,450,688.

The contents of Mr. Washington's letter state that the above referenced grant is being cancelled
because it, *"… is now inconsistent with, and no longer effectuates, the Department's priorities.".*
It goes on to state that, *"… the grant specified above provides funding for programs that
promote or take part in DEI initiatives or other initiatives that unlawfully discriminate…".* In
addition to the termination letter, pronouncements from the government (e.g., U.S. Department
of Education's 1/23/25 press release) suggest that DEI initiatives were the primary reason for
termination. Below we outline reasons for challenging the termination.

(1) **The inaccurate representation of proposed services in the Region 6 Gulf States
    application violates RMC's rights to due process.**

RMC Research Corporation (RMC) believes the reasons given for termination are not accurate
and misrepresent the services described in its Annual Service Plans to serve the States in Region
6, which was provisionally approved by RMC's U.S. Department of Education program officer,
by email, on February 13, 2025.

- Each state in the Region 6 application has a service plan that was collaboratively developed with RMC; the service plans represent each state's priority needs and initiatives. No state in Region 6 identified DEI or DEI related activities as a priority to be included in their respective Service Plan.

- Florida and Alabama have had state statutes (Act 34 of the 2024 Alabama Legislature; Florida Revised Statute 1000.05) in place that ban any activities related to DEI; Mississippi has similar pending legislation (House Bill 1193, Senate Bill 2515). Given those state proscriptions, the Chief State School Officers would never have approved RMC's proposed work plans if they promoted DEI initiatives and discrimination or in any way violated civil rights laws.

- Moreover, the U.S. Department of Education would not have granted preliminary approval of RMC's proposed Gulf Region projects on February 13, 2025, since that approval was provided to RMC <u>after</u> the President's Executive Order banning DEI.

Therefore, RMC believes that the termination of the Region 6 grant was arbitrary, unjustified, and violated RMC Research's rights to due process. Please refer to Appendices for more information: **Appendix I** for email notice, letter of termination; GAN termination and **Appendix II** for RMC's Application to serve Region 6 Gulf States, Grant Award Notification and Cooperative Agreement; **Appendix III** for Region 6 Annual Service Plans; **and Appendix IV** for Legal Claims Against Termination.

> (2) **RMC's proposed service plans for Florida, Alabama, and Mississippi cannot be inconsistent with Department priorities.**

The termination letter asserts that *"The grant is therefore inconsistent with, and no longer effectuates, Department priorities."* Approval of RMC's application is a demonstration of alignment with Department priorities. Since the government has yet to issue a new set of priorities, it is not possible for the proposed projects to now be inconsistent. As noted above, RMC received preliminary approval of the proposed Gulf Region projects by the U.S. Department of Education on February 13, 2025, constituting evidence that RMC's approach meets the Department's standards and priorities. See **Appendix III** for RMC's Region 6 Gulf States Annual Service Plans, approved by U.S. Department of Education, February 13, 2025.

- Authorizing legislation (ESRA-Title II) for the Comprehensive Centers states that, "*each Center must allocate resources and serve State and local education agencies according to the region's needs."* Projects are designed to provide direct benefits to state education agencies and as such, are based on the highest priorities set by the Chief State School Officers of Florida, Alabama, and Mississippi.

- Examples of proposed priorities identified by the states include addressing chronic absenteeism, supporting implementation of Alabama's numeracy act to improve mathematics teaching, developing a system to evaluate school administrators, providing Florida's teachers with high quality instructional materials, and reducing teacher turnover in Mississippi's schools.

(3) **Additional issues call into question the legality of the termination.**

In preparing its appeal to the U.S. Department of Education, RMC engaged the services of legal counsel to identify the legal basis for requesting invalidation of the termination of RMC's Region 6 Gulf States grant. **See complete framing of legal issues in Appendix IV.**

**RMC Research is requesting immediate and full reinstatement of the Region 6 -Gulf States Comprehensive Center grant**.

- RMC is prepared to resume implementing the Annual Service Plans as negotiated with the Chief State School Officers of Florida, Alabama, and Mississippi and approved by the U.S. Department of Education.

- If there are additional new priorities that the Department wishes to articulate, RMC is prepared to work with the Gulf States to provide plans to address those priorities.

- Further, RMC would appreciate acknowledgement that its proposed plans are in alignment with Department's current published priorities. Further, we ask that the Department notify the Chief State School Officers of the Region 6 Gulf States about restoration of the grant award, indicating that RMC is authorized to work with them to implement the approved service plans.

RMC Research Corporation is grateful for the opportunity provided in the Grant Termination Notice, "… to object to or challenge this termination decision…", an action we are pursuing through this letter and the attached narrative and documentation. We have successfully served the Gulf States since 2019 and are eager to continue working with them. RMC Research Corporation thanks you, in advance for the time and consideration you and your staff will commit to the consideration of this appeal.

Respectfully,

*Dr. Everett Barnes, Jr.*

Dr. Everett Barnes, Jr., President
RMC Research Corporation

## Appendix I

## Notices of Termination

As requested in the Grant Award Termination Letter of February 19, 2025, this Appendix contains copies of the following:

- Email from Deputy Assistant Secretary, Mark Washington, February 19, 2025

- Grant Award Termination Letter from Mr. Washington, February 19, 2025

- Grant Award Notification (GAN) Termination from Lavanna Weems, February 19, 2025

ED 000864

| From: | Washington, Mark |
|---|---|
| To: | Robin Jarvis |
| Cc: | Ryder, Ruth; Hoffman, Amanda; Weems, Kia; Williams, Damien |
| Subject: | [External Sender] GRANT AWARD TERMINATION: S283B240029_RMC_RESEARCH_CORP.pdf |
| Date: | Wednesday, February 19, 2025 2:39:26 PM |
| Attachments: | image001.png |
| | S283B240029_RMC_RESEARCH_CORP.pdf |

Dear Federal Grant Project Director,

Please see the attached letter, informing you of the U.S. Department of Education's decision to terminate your federal grant award, because the grant is now inconsistent with, and no longer effectuates, the Department's priorities.  You will receive an updated GAN notice following this email, confirming the decision and change.  You will also receive notification from the Department's G5 grants administration system.

Please also note the basis for challenge or appeal of this decision, as well as the deadline to respond, as noted in the language of the attached letter. Kindly contact my colleague, Dr. Amanda Hoffman, at Amanda.Hoffman@ed.gov, with any related questions or concerns about this information or the appeals process overall.

Respectfully,


Mark Washington

_____



**Mark Washington**
**Deputy Assistant Secretary**
United States Department of Education
Office of Elementary and Secondary Education
400 Maryland Avenue, SW | Washington, D.C. 20202
Phone: (202) 205-0167 | Mobile: (202) 549-9956  |  Email: mark.washington@ed.gov



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SECONDARY AND ELEMENTARY EDUCATION
OFFICE OF ADMINISTRATION

2/19/2025

Robin  Jarvis
Project Director
RMC RESEARCH CORP
3550 Buschwood Park Drive
Suite 270
Tampa, FL 33618

RE: Grant Award Termination

Dear  Robin  Jarvis        :

This letter provides notice that the United States Department of Education is terminating your federal award, S283B240029        . *See* 2 C.F.R. § 200.340-43; *see also* 34 C.F.R. § 75.253.

It is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States. The Acting Secretary of Education has determined that, per the Department's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives or any other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic. Illegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education. In addition to complying with the civil rights laws, it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4); *see also* 34 C.F.R. § 75.253. Therefore, pursuant to, among other authorities, 2 C.F.R. § 200.339-43, 34 C.F.R. § 75.253, and the termination provisions in your grant award, the Department hereby terminates grant No. S283B240029        in its entirety effective  2/19/2025        .

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 000866

If you wish to object to or challenge this termination decision, you must submit information and documentation supporting your position in writing within 30 calendar days of the date of this termination notice. Objections and challenges must be sent by email and first-class mail and addressed to the component head that oversees the grantmaking unit, which will typically be the Assistant Secretary of that unit. In this case, please address your objection or challenge to Ruth Ryder, Acting Assistant Secretary; Office of Elementary and Secondary Education; 400 Maryland Ave., SW; Washington, D.C. 20202; ruth.ryder@ed.gov.

Your appeal should contain the following:
1. a copy of the written notice of termination;
2. the date you received written notice of termination;
3. a brief statement of your argument and the disputed factual, legal, or other issues;
4. the amount of funds or costs in dispute, if any; and
5. any other relevant documents.

*See id.* § 200.342.

Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g). Failure to do so will result in the Department filing a report documenting your "material failure to comply with the terms and conditions of" this award on SAM.gov and taking any other appropriate enforcement actions. *See id.* § 200.344(i).

Finally, you are reminded of your duties under your agreement and Department of Education guidance regarding retention of grant records for at least three years.

Respectfully,

Mark Washington
Deputy Assistant Secretary for Management and Planning

cc: Ruth Ryder

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 000867

S283B240029



# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| **1** RECIPIENT NAME | **2** AWARD INFORMATION |
|---|---|
| RMC Research Corporation<br>3550 Buschwood Park Drive<br>Suite 270<br>Tampa, FL 33618 | PR/AWARD NUMBER  S283B240029<br>ACTION NUMBER  2<br>ACTION TYPE  Administrative<br>AWARD TYPE  Discretionary |

| **3** PROJECT STAFF | **4** PROJECT TITLE |
|---|---|
| RECIPIENT PROJECT DIRECTOR<br>Robin Jarvis  (813) 915-0010<br>jarvis@rmcres.com<br>EDUCATION PROGRAM CONTACT<br>Sarah M Zevin  (202) 260-8363<br>sarah.zevin@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>G5 PAYEE HELPDESK  888-336-8930<br>obssed@servicenowservices.com | 84.283B<br>The Region 6 Comprehensive Center |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Robin Jarvis | Project Director | 75 % |
| Heidi Goertzen | Co-Deputy Director | 50 % |
| Jack Schwarz | Co-Deputy Director | 50 % |
| Everett Barnes | Principal Investigator | 30 % |

**6** AWARD PERIODS

BUDGET PERIOD  10/01/2024 - 02/19/2025
PERFORMANCE PERIOD  10/01/2024 - 02/19/2025

FUTURE BUDGET PERIODS

N/A

**7** AUTHORIZED FUNDING

THIS ACTION  N/A
BUDGET PERIOD  $2,450,688.00
PERFORMANCE PERIOD  $2,450,688.00

**8** ADMINISTRATIVE INFORMATION

UEI  K2GWCKB1JCE4
REGULATIONS  CFR PART x
EDGAR AS APPLICABLE
2 CFR AS APPLICABLE
ATTACHMENTS  N/A

**9** LEGISLATIVE AND FISCAL DATA

AUTHORITY:  PL X X X
PROGRAM TITLE:  COMPREHENSIVE REGIONAL ASSISTANCE CENTERS
CFDA/SUBPROGRAM NO:  84.283B

ED 000868

S283B240029



# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**10**

| | |
|---|---|
| PR/AWARD NUMBER: | S283B240029 |
| RECIPIENT NAME: | RMC Research Corporation |
| GRANTEE NAME: | RMC RESEARCH CORP |
| | 1000 MARKET ST UNIT 2, |
| | PORTSMOUTH, NH 03801 - 3358 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 80.4% |

TERMS AND CONDITIONS

(1) THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION.

(2) The grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. 200.340(a)(4); see also 34 C.F.R. 75.253.

LAVANNA WEEMS   Digitally signed by LAVANNA WEEMS
Date: 2025.02.19 18:40:28 -05'00'

| | |
|---|---|
| **AUTHORIZING OFFICIAL** | **DATE** |

Ver. 1

ED 000869

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**    Unique items of information that identify this notification.

   **PR/AWARD NUMBER -**   A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

   **ACTION NUMBER -**  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

   **ACTION TYPE -**  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

   **AWARD TYPE -**  The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -**   This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

   **\*RECIPIENT PROJECT DIRECTOR -**  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

   **EDUCATION PROGRAM CONTACT -**  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

   **EDUCATION PAYMENT CONTACT -**  The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**   Project activities and funding are approved with respect to three different time periods, described below:

   **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

   **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

   **\*FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

   **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

   **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

   **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

   **RECIPIENT COST SHARE -**  The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

   **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -**  This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

   **UEI -**     The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

ED 000870

**\*REGULATIONS** – Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS** – Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA** – The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS** – The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award.

**AMOUNT** – The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS** – Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER** – The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME** – The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE** – The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE** – The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL** – The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF** – The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT** – The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT** – The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT** – The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE** – If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

## Appendix II

## Application, Grant Award Notification, Cooperative Agreement

This Appendix references the following key documents:

- RMC's Application for Region 6 – Gulf States

- Cooperative Agreement between RMC Research Corporation and the U.S. Department of Education, December 27, 2024

- Grant Award Notification from Jean Marchowsky, September 26, 2024

In the interest of space only portions of each document have been included in the Appendix. RMC's complete Application to serve as the Region 6 – Gulf States Comprehensive Center is on file at the U.S. Department of Education for reference. Relevant portions of the Grant Award Notification (GAN) – S283B240029, issued on September 26, 2024, are attached. The complete GAN is on file at the Department of Education. Finally, relevant portions of the Cooperative Agreement, between RMC Research Corporation and the U.S. Department of Education, are included for reference. The entire document is on file at the Department of Education.

## **Application**

RMC Research Corporation's unredacted version of the Application for the Region 6 – Gulf States Comprehensive Center (Application PR/Award #S283B240029), serving Florida, Mississippi, and Alabama can be found at the U.S. Department of Education. RMC's Application was developed in response to the Department's Notice of Invitation to Apply, published in the Federal Register on May 13, 2024 (89FR41498). That Notice included the Final Priorities, as determined by the Secretary, following Congressional statute, including the requirements in the Education Sciences Reform Act, Title II, Sections 203-209. The Notice also presented specific requirements, definitions, and selection criteria.

RMC Research Corporation's Application underwent at least four (4) independent reviews before final award and authorization to proceed. These reviews include:

- An independent review by an external, select panel, under the supervision of the Department, which recommended RMC's Application for Grant Award;

- A review, and confirmation by, the Secretary of Education of the Panel's recommendation of award;

- The issuing by the Department of a Grant Award Notice (GAN) based on the requirements in the Notice of Application and incorporating RMC's approved Application and terms and conditions of award;

- The mutually agreed upon Cooperative Agreement between RMC Research and the US Department of Education, which incorporated the content of RMC's Application for the Region 6 – Gulf States Comprehensive Center and defined the roles and responsibilities of both parties.

The critical point that RMC Research wishes to make is that, after these multiple reviews, there was not a single comment suggesting that RMC Research had failed to address the Secretary's priorities, defined through statute, for Comprehensive Centers; or the suggestion that the Application contained or promoted discriminatory practices; or included inappropriate DEI activities –the concerns that were cited by the Department as justification for the termination of the grant for Region 6 – Gulf States.

Further the Department reviewed and approved the Annual Service Plan for each State to be served by RMC Research, as the Region 6 Gulf States Comprehensive Center. The Annual Service Plan was accepted by the Department without comment or recommendations for change or modification.

## **Cooperative Agreement**

The Region 6 Comprehensive Center Gulf States awarded to RMC Research Corporation is codified in a document (Cooperative Agreement) that establishes the responsibilities of both RMC Research Corporation (Grantee) and the US Department of Education (Department).

The terms and conditions for the work to be performed by RMC, as the Region 6 – Gulf States grantee, under this Cooperative Agreement incorporates four (4) referenced documents:

- RMC's approved application;

- The Notice published on May 13, 2024 (89 FR 41409);

- The Notice of final priorities published May 13, 2024 (89 FR 41498); and

- The Grant Award Noticed issued September 26, 2024

A Cooperative Agreement was selected as the contractual vehicle because, as stated in that document, *"The Secretary has determined that **substantial involvement with the Grantee**, as specified through this Agreement, is necessary to carry out the collaboration required…"*. The Agreement goes on to state, *"There will be a high degree of interaction between the Grantee and the Department…**with substantial involvement of the Department in project activities**…"*, to include frequent communication regarding operations, review of products and significant input and support regarding coordination. Clearly, the Cooperative Agreement, empowered the Department to engage and have substantial involvement in all of Region 6's projects. During these engagements there is no mention of new priorities, questionable DEI activities or other issues cited in the Termination Letter.

The primary performance responsibilities of RMC Research in the Cooperative Agreement reside in the approved Annual Service Plan (ASP), detailing work to be performed with each State. See Appendix III for information about the service plans which were developed in collaboration with the Chief State School Officers of Florida, Alabama, and Mississippi.

Finally, the Cooperative Agreement's Article VI: Failure to Address Objectives, states that, *"Failure to comply with the content of this Agreement may result in the Secretary imposing special conditions…"*. **RMC Research requests written documentation explaining in what ways it failed to comply with the Cooperative Agreement or that justify the claims for termination cited in Mr. Washington's letter of 02/19/2025.**

**Grant Award Notification (GAN)** (S283B240029)
(See Attached)



**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

| | | | |
|---|---|---|---|
| **1** | RECIPIENT NAME<br><br>RMC Research Corporation<br>3550 Buschwood Park Drive<br>Suite 270<br>Tampa, FL 33618 | **2** | AWARD INFORMATION<br><br>PR/AWARD NUMBER    S283B240029<br>ACTION NUMBER    1<br>ACTION TYPE    New<br>AWARD TYPE    Discretionary |
| **3** | PROJECT STAFF<br><br>RECIPIENT PROJECT DIRECTOR<br>  Robin Jarvis        (813) 915-0010<br>  jarvis@rmcres.com<br>EDUCATION PROGRAM CONTACT<br>  Sarah M Zevin        (202) 260-8363<br>  sarah.zevin@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>  G5 PAYEE HELPDESK    888-336-8930<br>  obssed@servicenowservices.com | **4** | PROJECT TITLE<br><br>84.283B<br>The Region 6 Comprehensive Center |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Robin Jarvis | Project Director | 75 % |
| Heidi Goertzen | Co-Deputy Director | 50 % |
| Jack Schwarz | Co-Deputy Director | 50 % |
| Everett Barnes | Principal Investigator | 30 % |

**6** AWARD PERIODS

BUDGET PERIOD        10/01/2024 - 09/30/2025
PERFORMANCE PERIOD    10/01/2024 - 09/30/2029

FUTURE BUDGET PERIODS

| BUDGET PERIOD | DATE | AMOUNT |
|---|---|---|
| 2 | 10/01/2025 - 09/30/2026 | $2,450,688.00 |
| 3 | 10/01/2026 - 09/30/2027 | $2,450,688.00 |
| 4 | 10/01/2027 - 09/30/2028 | $2,450,688.00 |
| 5 | 10/01/2028 - 09/30/2029 | $2,450,688.00 |

**7** AUTHORIZED FUNDING

THIS ACTION        $2,450,688.00
BUDGET PERIOD        $2,450,688.00
PERFORMANCE PERIOD    $2,450,688.00

**8** ADMINISTRATIVE INFORMATION

UEI        K2GWCKB1JCE4
REGULATIONS    CFR PART x
          EDGAR AS APPLICABLE
          2 CFR AS APPLICABLE
ATTACHMENTS    2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , 17D , 18D , B OESE , GE1 , GE2 , GE3 , GE4 , GE5

**9** LEGISLATIVE AND FISCAL DATA

AUTHORITY:        PL X X X
PROGRAM TITLE:    COMPREHENSIVE REGIONAL ASSISTANCE CENTERS        **ED 000875**



# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CFDA/SUBPROGRAM NO: | | | 84.283B | | | | | | |

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 1000A | 2024 | 2024 | ES000000 | B | Q2J | 000 | 283 | 4101C | $2,450,688.00 |

**10**

PR/AWARD NUMBER:         S283B240029
RECIPIENT NAME:         RMC Research Corporation
GRANTEE NAME:         RMC RESEARCH CORP
         1000 MARKET ST UNIT 2,
         PORTSMOUTH, NH 03801 - 3358
PROGRAM INDIRECT COST TYPE:    Unrestricted
PROJECT INDIRECT COST RATE:    80.4%

TERMS AND CONDITIONS

(1)   THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:

1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180; NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIAL TERMS AND CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.

THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF:

1) CONGRESS HAS APPROPRIATED SUFFICIENT FUNDS UNDER THE PROGRAM;
2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT;
3) THE GRANTEE HAS MADE SUBSTANTIAL PROGRESS TOWARD MEETING THE GOALS AND OBJECTIVES OF THE PROJECT;
4) THE SECRETARY ESTABLISHED PERFORMANCE MEASUREMENT REQUIREMENTS FOR THE GRANT IN THE APPLICATION NOTICE, THE PERFORMANCE TARGETS IN THE GRANTEE'S APPROVED APPLICATION;
5) THE RECIPIENT HAS SUBMITTED REPORTS OF PROJECT PERFORMANCE AND BUDGET EXPENDITURES THAT MEET THE REPORTING REQUIREMENTS FOUND AT 34 CFR 75.118, 2 CFR 200.328 AND 200.329, AND ANY OTHER REPORTING REQUIREMENTS ESTABLISHED BY THE SECRETARY; AND
6) THE GRANTEE HAS MAINTAINED FINANCIAL AND ADMINISTRATIVE MANAGEMENT SYSTEMS THAT MEET THE REQUIREMENTS IN 2 CFR 200.302, FINANCIAL MANAGEMENT, AND 2 CFR 200.303, INTERNAL CONTROLS.

IN ACCORDANCE WITH 2 CFR 200.308(c)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.

THE SECRETARY ANTICIPATES FUTURE FUNDING FOR THIS AWARD ACCORDING TO THE SCHEDULE IDENTIFIED IN BLOCK 6. THESE FIGURES ARE ESTIMATES ONLY AND DO NOT BIND THE SECRETARY TO FUNDING THE AWARD FOR THESE PERIODS OR FOR THE SPECIFIC AMOUNTS SHOWN. THE RECIPIENT WILL BE NOTIFIED OF SPECIFIC FUTURE FUNDING ACTIONS THAT THE SECRETARY TAKES FOR THIS AWARD.



**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

(2)  The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made under this grant. The term subaward means:
1. A legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient. (See 2 CFR 200.331(a))
2. The term does not include your procurement of property and services needed to carry out the project or program (The payments received for goods or services provided as a contractor are not Federal awards, see 2 CFR 200.501(f) of the OMB Uniform Guidance: "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards").
3. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract. (See 2 CFR 200.1)

(3)  Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(4)  In accordance with 34 CFR 75.234(b), this award is classified as a cooperative agreement and will include substantial involvement on the part of the education program contact identified in Block 3. This award is made with the condition that the recipient and the U.S. Department of Education (Department) establish within 60 days of award, and successfully maintain, a cooperative agreement, which delineates the special provisions between the Department and the recipient, signed by both parties.

If you wish to request reconsideration of these specific conditions, please send written notification describing why such conditions should not be imposed on this grant to your Department program officer.

(5)  Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions. The negotiated indirect cost rate agreement authorizes a non-Federal entity to draw down indirect costs from the grant awards. The following conditions apply to the below entities.

A. All entities (other than institutions of higher education (IHE))

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under EDGAR or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of higher education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant award will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant s project period, the indirect cost rate



**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6)   In accordance with 35 CFR 75.234(b), this award is classified as a cooperative agreement and will include substantial involvement on the part of the education program contact identified in block 3. This award is made with the condition that the recipient and the U.S. Department of Education successfully maintain its current cooperative agreement, which delineates the special provisions between the U.S. Department of Education and the recipient, signed by both parties.

If you wish to request reconsideration of this/these specific condition(s), please send written notification describing why such condition(s) should not be imposed on this grant to your Department program officer.

(7)   As a condition of this award, your organization is required to comply with the following requirements due to its for-profit status:

a. Cost Principles. For-profit organizations are subject to the requirements in 2 C.F.R. part 200 subpart E, Cost Principles.
b. Indirect Cost Rates. The principles for determining the general indirect cost rate that are applicable to for-profit organizations are found in 48 C.F.R. part 31 Contract Cost Principles and Procedures (EDGAR 75.560 (a)(3)).
c. Annual Audit Requirement. As a condition of this award, your organization is required to complete a compliance audit annually for any fiscal year in which it expends more than $750,000 in Federal funds, excluding funds received through procurement contracts with the Federal government. Expenditures associated with grant funds expended under contracts with third parties will be examined as part of this compliance audit.

Non-federal entities that are recipients of federal awards are required to submit audited financial statements to the Department as a part of the compliance audit. The compliance audit generally should be coordinated with the recipient s existing financial statement audit. Auditors do not need to conduct the financial statement audit in accordance with Generally Accepted Government Auditing Standards (GAGAS) but should instead conduct the financial statement audit in compliance with either Generally Accepted Auditing Standards (GAAS) or standards put in place by the Public Company Accounting Oversight Board (PCAOB). However, auditors must conduct the compliance audit in accordance with GAAS and GAGAS. If the recipient is a subsidiary for which separate financial statements are not available, the recipient may submit the financial statements of the consolidated group.

Recipients that have one or more awards are required to have a compliance audit for each of these awards. The compliance audits and related reporting will generally follow the requirements for a program specific audit as set forth in Chapter 14 of the AICPA Audit Guide Government Auditing Standards and Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance), Subpart F, Audit Requirements. The compliance requirements subject to testing are expected to be similar to those mandated for non-profit recipients under the Uniform Guidance, Management Decisions, 200.521, Appendix XI to Part 200 - Compliance Supplement and include the following: activities allowed or un-allowed, allowable costs/cost principles, cash management, Davis Bacon Act, eligibility, equipment and real property management, matching/level of effort/earmarking, period of availability of federal funds, procurement/suspension/debarment, program income, real property acquisition/relocation assistance, reporting, sub-recipient monitoring, and special tests and provisions.

The compliance audit requirements are effective starting with the fiscal year in which the project period for this grant begins. For recipients, financial statement and compliance audit submissions are due to the Department within six months of the recipients fiscal year-end dates. For recipients, the compliance audits must be submitted, along with audited financial statements, to the Department s Audit Resolution Division at: AuditResolutionDivision@ed.gov or U.S. Department of Education, Audit Resolution Division, 550 12th Street, SW, 6th Floor, Washington, DC 20202.

If you wish to request reconsideration of these specific conditions, please send written notification describing why such conditions should not be imposed on this grant to your Department program officer.

**ED 000878**

S283B240029

# US Department of Education
## Washington, D.C. 20202

## GRANT AWARD NOTIFICATION

JEAN MARCHOWSKY   Digitally signed by JEAN MARCHOWSKY
Date: 2024.09.26 16:23:26 -04'00'

_____                    _____

AUTHORIZING OFFICIAL                                    DATE

Ver. 1

ED 000879

## Appendix III

## A Summary of RMC's Region 6 – Gulf States Approved Annual Service Plans

This Appendix presents a summary of the Region 6 Gulf States Annual Service Plans. The States served by RMC Research--Florida, Mississippi, and Alabama--have legislation, regulations and/or policies regarding discrimination and DEI activities. Examination of the plans for each state clearly demonstrate that no such activities as described in the termination notice are presented or were ever proposed or approved by the states in the region or undertaken by RMC Research.

Annual Service Plans were developed by RMC, in collaboration with the Chief State School Officer and other senior State Education personnel. They reflect each state's high leverage issues and priority initiatives and show where the Region 6 – Gulf States Comprehensive Center technical assistance and support was being sought. The initiatives/projects were collaboratively developed and endorsed by the respective Chief State School Officer and subsequently received and approved by the U.S. Department of Education.

The full text of Annual Service Plans for each state in Region 6 can be found in RMC Research Corporation's application for the Region 6 – Gulf States and in the Annual Service Plans submitted to and approved by the U.S. Department of Education on February 13, 2025.

ED 000880

**A Summary of Region 6 Annual Service Plan Projects**

**Alabama**

- **Increasing the Effectiveness of School Administrators** – The Gulf Comprehensive Center will assist the ALSDE in developing a school administrator evaluation system and resources for schools that have difficulty recruiting and retaining effective administrators.
- **Alabama Numeracy Act Implementation Support** – This project will provide technical assistance to the Office of Mathematics Improvement (OMI) at the ALSDE in implementing the Alabama Numeracy Act (ANA). The project will support the building of state capacity by supporting the OMI team in developing and implementing ANA-required programs and structures, including an Academic Intervention Framework, the Turnaround Leaders Academy, and an accountability system for math coaches.

**Florida**

- **Benchmarks-Aligned High-Quality Instruction:** The Gulf Comprehensive Center will assist the FDOE in implementing benchmarks-aligned high-quality instruction in reading and mathematics statewide. Staff from the Gulf Comprehensive Center will assist in professional learning around evidence-based practices in both reading and mathematics for state, regional, district, and school leaders.
- **Strengthening Professional Learning to Improve Instruction and Student Outcomes:** The Gulf Comprehensive Center will assist the FDOE in establishing a professional learning marketplace with the goal of strengthening teacher instructional practices and student outcomes.
- **Improving Outcomes for English Language Learners (ELLs) and Students with Disabilities (SWD) through Evidence-Based Practices for High-Quality Instruction:** The Gulf Comprehensive Center will partner with the FDOE in developing, implementing, and scaling two Instructional Guides combining evidence-based practices for high-quality instruction meeting the needs of ELLs and SWD. The Instructional Guides will be used to train regional-, district-, and school-level leaders who will pilot these materials in an identified set of districts. Professional learning communities will be used in training classroom teachers and leaders in these districts on the evidence-based practices exemplified in the Instructional Guides.

**Mississippi**

- **Mississippi Improving English Learner Outcomes through Continuous Improvement:** The Gulf Comprehensive Center will partner with the MDE to support English learner (EL) achievement in Mississippi schools through building teacher and leader capacity to use and respond to data. The project focuses on the implementation

and scaling of the District Self-Assessment Toolkit developed in partnership between the MDE and the Council for Chief State School Officers (CCSSO). The toolkit allows educators to use data to develop a system improvement plan that maximizes learning opportunities for ELs.

- **Ensuring Effective Leaders to Support Teacher Retention:** The Gulf Comprehensive Center will assist the MDE in conducting a rubric adoption process for the Administrator Growth Rubric to ensure it aligns with recent research and emphasizes the role administrators play in supporting teachers to both remain in the profession and use evidence-based instructional practices.

- **MDE School Improvement Community of Practice:** The Gulf Comprehensive Center will assist the Office of School Improvement at MDE to develop and deliver supports for schools escalated to Comprehensive Support & Improvement (CSI) status based on identification for their students with disabilities (SWDs) or other subgroups (e.g., high poverty, ELs) based on their performance over three years. This project focuses on improving instruction and instructional leadership to better serve the needs of Mississippi's most vulnerable student populations.

- **State Supported Resource Allocation Review:** This project will focus on assisting the MDE in revising and implementing a resource allocation review (RAR) process to support the identification of resource inequities in districts serving a significant number of schools conducting improvement activities.

<u>Regional</u>

- **Reducing Chronic Absenteeism:** This project will focus on supporting Florida and Mississippi in implementing effective interventions to reduce chronic absenteeism. The project focuses on the development of training and coaching to support the use of early warning systems (EWS) to identify students at risk of chronic absenteeism and nationally recognized and state-specific evidence-based interventions for addressing chronic absenteeism.

## Appendix IV

## Legal Claims Against Termination

In preparing its appeal to the U.S. Department of Education, RMC engaged the services of legal counsel to identify the legal basis for requesting invalidation of the termination of RMC's Region 6 Gulf States grant. Below are the extended arguments against termination. In submitting this claim, RMC reserves all rights to seek relief in an appropriate judicial forum at any time. RMC's omission of any legal claim from this document does not constitute a waiver of the right to assert that claim in the future.

*** 

RMC Research received a Grant Award Notification on September 26, 2024, for the Region 6 Gulf States grant. The grant included a period of performance from October 1, 2024, to September 30, 2029. With respect to any potential termination of the award, the sole references to termination were that the Department could terminate if "a recipient or subrecipient materially fails to comply with any term of an award," or if "the grantee, its employees, or its subrecipients" engaged in prohibited trafficking in persons. In the cooperative agreement that we subsequently entered into, the sole reference to potential termination was that "failure to comply with the content of this agreement may result in . . . suspending or terminating the award, pursuant to 2 CFR §200.339-343."

On February 19, 2025, RMC Research received notice that the Department was terminating the award under the Comprehensive Center program for Region 6 Gulf States. Awards covering eighteen of the twenty Comprehensive Centers were terminated with identical notices alleging that the award "provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States."[1] Prior to receiving this notification, RMC had no indication that the Department had any concerns with our implementation of the award.

For the reasons described below, the termination of our grant was contrary to multiple statutes, constitutional provisions, and regulations, and was also arbitrary and capricious. RMC respectfully requests that the Department reinstate our grant immediately so we can continue to provide services to the state education agencies, students, teachers, and communities of Florida, Alabama, and Mississippi through the Region 6 Gulf States Comprehensive Center.

---

[1] A copy of The termination notification and GAN termination is attached as Appendix I.

## 1.  The Termination Violates the Department Regulations

In its termination notice, the Department cited a provision of the Uniform Grants Guidance (UGG), 2 C.F.R. § 200.340(a)(4), as the legal authority for terminating the grant. The Department claimed that this provision authorizes the Department to terminate a grant that is "inconsistent with, and no longer effectuates, Department priorities." That provision, however, does not authorize the Department to terminate this award based on "Department priorities."

The Department of Education adopts the Office of Management and Budget's Uniform Grants Guidance to serve as the Department's own regulations for federal financial assistance awards. 2 C.F.R. § 3474.1(a). In 2024, OMB revised the Uniform Grants Guidance with an effective date of October 1, 2024. The Department confirmed that the revised Uniform Grants Guidance applied to "[a]ny Discretionary grant" awarded by the Department "with a performance period start date on or after October 1, 2024." Dep't of Educ, *Frequently Asked Questions, 2 CFR Part 200*, at 4.[2] **Because the period of performance for this grant began on October 1, 2024, the revised Uniform Grant Guidance applies.**

Under the revised Uniform Grants Guidance, the Department may terminate an award based on "program goals or agency priorities" **only where such grounds for termination are "clearly and unambiguously" stated in the terms and conditions of the individual award**. 2 C.F.R. §§ 200.340(a)(4), (b); *see also* 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024). There was no such clear and unambiguous language in this award. The terms and conditions make no mention at all that the Department could potentially terminate the award based on the Department's "program goals or agency priorities."

Because this ground for termination was not specified in the award, the Department's termination of the grant was contrary to the Department's applicable regulations and thus contrary to law. The grant must be reinstated in these circumstances. *See, e.g.*, *Healthy Futures of Texas v. Dep't of Health & Hum. Servs.*, 315 F. Supp. 3d 339, 348 (D.D.C. 2018); *Pol'y & Rsch., LLC v. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62 (D.D.C. 2018); *Planned Parenthood of Greater Washington & N. Idaho v. Dep't of Health & Hum. Servs.*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018); *Healthy Teen Network v. Azar*, 322 F. Supp. 3d 647 (D. Md. 2018).

## 2.  The Termination Violates the Statute Establishing Comprehensive Centers

In terminating eighteen of the twenty comprehensive center awards, including our award, the Department has violated the statute establishing the Comprehensive Center program.

Congress established the Comprehensive Centers through the Educational Technical Assistance Act of 2002. In that Act, Congress mandated that the Department must award "not less than" 20 grants to local entities or groups to serve as Comprehensive Centers. 20 U.S.C. § 9602(a)(1). The Act further directed that the Secretary of Education "shall ensure that not less than 1

---

[2] https://www.ed.gov/media/document/faqs-uniform-guidance-107433.pdf.

comprehensive center is established in each of the 10 geographic regions served by the geographic regions served by the regional educational laboratories." *Id.* § 9602(a)(2)(A).

Congress further created a detailed structure for the Comprehensive Center program, including regional advisory committees and directives on how the Centers would interact with the Department and local stakeholders. The complicated structure involves coordination with advisory boards, the Department, Regional Education Laboratories, state agencies, and other regional providers. 20 U.S.C. §§ 9602(f)-(h). This type of coordination takes time and provides the specific mechanisms for each Comprehensive Center to ensure their work is reflective of and responsive to local needs. As such, although Congress did not directly mandate five-year grants, it did require grant applicants to include a five-year implementation plan. *Id.* § 9602(c)(2).

In terminating eighteen out of the twenty Comprehensive Center awards, the Department has effectively shut down this statutorily required program for FY2025, and the Department has not given any indication it intends to correct this violation for future years. Due to the terminations, the Department is failing to maintain "not less than 20 grants" for Comprehensive Centers, and is not "ensur[ing] that not less than 1 comprehensive center is established in each of the 10 geographic regions served by the regional educational laboratories," as required by law. The congressional scheme requiring Comprehensive Centers, regional advisory councils, coordination with stakeholders, annual reports, and five-year programs has been abandoned. Because the complicated structure Congress created is time-consuming to implement, the only way to correct this violation of the Department's statutory requirements is to immediately reinstate the terminated awards, including ours.

### 3. The Termination Was Arbitrary and Capricious

The termination of RMC's Region 6 Gulf States grant is "arbitrary and capricious" agency action in violation of the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(A).

The APA's prohibition on arbitrary and capricious agency action requires agencies "to examine all relevant factors and record evidence, and to articulate a reasoned explanation for [their] decision[s]." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). To do so, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action fails to satisfy this standard if the agency "failed to consider an important aspect of the problem, *id.*, or if it "offer[s] an explanation for its decision that runs counter to the evidence before the agency," *Am. Wild Horse*, 873 F.3d at 923.

The Department's termination notice claimed that RMC's performance of the grant violated civil rights laws by promoting or engaging in DEI initiatives. The notice provided no specific examples how our performance under the grant constitutes unlawful action, **nor could it have given the state laws, regulations, and policies in place in Florida, Alabama, and Mississippi. As described in the cover letter, the Chief State School Officers of the Region 6 Gulf states reviewed the proposed service plans in RMC's application; they would not have supported the grant application if it in any way promoted or engaged in DEI initiatives.**

The Department did not articulate a "rational connection between the facts found and the choice made" to terminate the CCs in the current grant cycle. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 3 (1983). The Department clearly "offered an explanation for its decision that runs counter to the evidence before the agency," *Am. Wild Horse Pres. Campaign*, 873 F.3d at 923. A handful of examples from prior award cycles – even if the descriptions of those projects had been accurate, which they are not – simply have no bearing on our work under this particular grant. The Department has pointed to no evidence or information concerning work under the current grant that could rationally explain a change in the agency's decision to fund the grants. As such, the Department's termination decision is arbitrary and capricious.

## 4. The Termination Violates the 2024 Appropriations Act and the Constitution

The termination is also unlawful because it violates the Further Consolidated Appropriations Act of 2024 ("the 2024 Appropriations Act") and the constitutional separation of powers. In the 2024 Appropriations Act, Congress mandated that the Department spend a specific sum of money on the Comprehensive Center program, and the Department is violating that mandate by refusing to spend the money Congress appropriated.

Congress provided in the 2024 Appropriations Act that, of the $5.78 billion lump-sum appropriated for carrying out school improvement activities, "$50,000,000 shall be available to carry out section 203 of the Educational Technical Assistance Act of 2002," which is the Comprehensive Center program. Pub. L. 118-47, 138 Stat 460, 683 (Mar. 23, 2024). This "shall be available" language represents an earmark for the Comprehensive Center program. The Government Accountability Office (GAO) has held that this language means the agency must spend the earmarked amount on the designated program and may not divert it for other purposes covered by the lump-sum appropriation. GAO, *Small Business Administration—Availability of Appropriations for Loan Modernization and Accounting System*, B-326941, at 7 (Dec. 10, 2015).

Given that the Department has terminated eighteen of the twenty Comprehensive Center awards and has no intent to re-award the funds, the Department will surely fail to spend the $50,000,000 mandated by Congress for this program before the funds expire on September 30, 2025. The failure to spend the full $50,000,000 before expiration violates the 2024 Appropriations Act.

The Supreme Court has made clear that an agency's failure to spend a specific sum of money mandated by Congress on a program is unlawful and will result in a court ordering the agency to spend the money. In *Train v. City of New York*, 420 U.S. 35 (1975), the Supreme Court held that President Nixon had unlawfully directed the Environmental Protection Agency not to expend the full amount of money that Congress directed be spent under a statute. The Court held that the agency lacked discretion to spend less than the full sums that Congress directed, and the Court accordingly affirmed an order directing the agency to spend those full sums. *See id.* at 42-49. Here, as in *Train*, Congress has directed the Department to spend a specific sum of money on the Comprehensive Center program, and the Department lacks discretion not to do so.

The Department's failure to spend the money appropriated by Congress for the program also violates the constitutional separation of powers. The Constitution empowers Congress to make laws, U.S. Const. art. I, § 1, and requires the President to faithfully execute those laws, *id.* art. II, § 3. Congress's powers to set the policies of the nation are at their apex when it comes to spending money, as the Constitution "exclusively grants the power of the purse to Congress, not the President. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018) (citing U.S. Const. art. I, §§ 8, 9).

From these first principles, it has been long recognized that Presidents have no inherent constitutional authority to block, amend, or subvert appropriations enacted into law by Congress. "[T]he President is without authority to thwart congressional will by canceling appropriations passed by Congress." *San Francisco*, 897 F.3d at 1231; *see also In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (explaining that "the President does not have unilateral authority to refuse to spend [appropriated] funds").

Here, the Department lacked the constitutional authority to refuse to spend the money that Congress appropriated for the Comprehensive Center program. The termination thus violates the constitutional separation of powers.

## 5.  The Termination Violates the Impoundment Control Act

The termination likewise violates the Impoundment Control Act of 1974. That Act sets forth limited circumstances in which an agency may "defer" or "rescind" appropriated funds, none of which are met here.

Under the ICA, a "deferral" encompasses any "withholding or delaying the obligation or expenditure of" appropriated funds, as well as "any other type of Executive action or inaction which effectively precludes the obligation or expenditure of" appropriated funds. 2 U.S.C. § 682(1). When the Executive Branch wishes to defer funds, it must send a special message to Congress detailing the money to be deferred and the reasons for deferral. 2 U.S.C. § 684(a).

There are only three permissible grounds for deferrals: (1) "to provide for contingencies;" (2) "to achieve savings made possible by or through changes in requirements or greater efficiency of operations;" or (3) "as specifically provided by law." 2 U.S.C. § 684(b). GAO has made clear that policy reasons, including efforts to ensure funds are spent consistent with the President's policy preferences, are not a proper basis for deferrals. GAO, *Office of Management and Budget—Withholding of Ukraine Security Assistance*, B-331564, at 6 (Jan. 16, 2020).

Where the Executive Branch seeks to "rescind" appropriated funds, the ICA requires that the President send a special message to Congress specifying the funds he seeks to have rescinded and the reasons for his proposal. 2 U.S.C. § 683(a).

The termination here is both an unlawful rescission and an unlawful deferral. It is a rescission because, as explained above, the Department has rescinded grants that comprise the vast majority of the $50,000,000 that Congress directed the Department to spend on the Comprehensive Center program, and the Department has no realistic way to spend those funds on the program before

they expire on September 30, 2025. The Department thus has rescinded funds, without following the ICA's required procedures for proposing a rescission.

The termination is also a textbook deferral. By terminating the grant and precluding performance of the award, the Department plainly is "withholding or delaying the obligation or expenditure of" funds. 2 U.S.C. § 682(1). If the grant had not been terminated, the appropriated funds would be promptly spent, but now their expenditure is indefinitely delayed. The Department did not follow the ICA's required procedure for notifying Congress of a deferral, nor could it have because the reason for the termination was, by the Department's own admission, policy objections and not any of the ICA's acceptable reasons for a deferral.

Nor can the termination constitute a "programmatic delay." GAO has explained that "programmatic delays occur when an agency is taking necessary steps to implement a program, but because of factors external to the program, funds temporarily go unobligated." B-331564, at 7. Programmatic delays are meant "to *advance* congressional budgetary policies by ensuring that congressional programs are administered efficiently." *City of New Haven v. United States*, 809 F.2d 900, 909 (D.C. Cir. 1987). Permissible programmatic delays do not include when the Executive Branch withholds money "on its own volition" to "ensure compliance with presidential policy prerogatives." B-331564, at 7. The delay in spending funds here was precisely to "ensure compliance with presidential policy prerogatives." B-331564, at 7, and thus is not a programmatic delay.

The only way for the Department to cure this unlawful deferral is to immediately restore Region 6 Gulf States grant and its distribution of funding to RMC Research. Any other action, such as re-competing the award, would take substantial time and add to the very delay that is underlying this violation.

## 6. The Termination Violates the Due Process Clause Because It Is Based on an Executive Order That Is Unconstitutionally Vague

Finally, the Department's termination of our award clearly arose from the now-enjoined Executive Order (EO) directing agencies to terminate "DEI" grants and contracts. As a federal district court has already concluded, the termination provision of the EO is unconstitutionally vague, and the unconstitutionality of the EO renders the termination of our award unconstitutional as well.

As the Department is aware, on January 20, President Trump signed Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing (EO). Among other things, the EO directed agencies to terminate "equity-related" grants or contracts, but did not define DEI or "equity-related" or otherwise provide guidance on how to apply the directive. Just days after the Executive Order, the Department announced that, "[f]ollowing President Trump's recent Executive Orders," the Department had taken action "to eliminate harmful Diversity, Equity, and Inclusion (DEI) initiatives." The Department then made clear that it would "continue its comprehensive review of all agency programs and services to identify additional initiatives and working groups that may be advancing a divisive DEI agenda." Press Release, *U.S. Department of Education Takes Action to Eliminate DEI* (Jan. 23, 2025).

That EO has now been preliminarily enjoined. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333-ABA, ECF No. 44 (D. Md. Feb. 21, 2025) (PI Ruling). The court found that the EO's termination provision is likely unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause. because the term "equity-related" created "the very real possibility of arbitrary and discriminatory enforcement". The EO did not provide grantees and contractors sufficient notice about "what, if anything, they can do to bring their grants into compliance such that they are not considered 'equity-related' ". *See* PI Ruling at 40-42. The injunction prohibits the agencies involved in the case, including the Department of Education, from terminating *any* contracts and grants based on the EO.

While the Department did not specifically cite the EO in RMC's termination notification, the EO clearly was the driving force behind the termination. Indeed, the termination notification echoed the EO's directive and broadly asserted that RMC's Region 6 Gulf States work "promote[s] or take[s] part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic." There can be no dispute that the purported role of DEI in our work was the Department's basis for ending the award.

For the same reasons that the District Court found it likely that the EO is unconstitutionally vague on its face, the EO is unconstitutional as applied to the termination of RMC's award. The termination certainly demonstrates "arbitrary enforcement". RMC's Region 6 – Gulf States grant has no clear relationship to DEI or the goals of diversity, equity, or inclusion. As indicated in the cover letter, the Chief State School Officers of Florida, Alabama, and Mississippi were involved in creating the services plans and those states proscribe DEI initiatives. The Comprehensive Centers take on work as requested by states, aligned with statutory and Department-identified priorities. Moreover, the fact that two of the twenty Comprehensive Centers were not terminated, for reasons not publicly explained, shows the arbitrariness of these terminations.

The termination letter also makes clear how little notice RMC had of what the EO actually covers. Our termination notice and the press release accompanying it are so devoid of relevant content that it is impossible to identify what standard the Department may have used, if indeed it used any standard at all, in deciding to terminate RMC's award based on supposed DEI concerns. To this day, we have no additional information about why RMC's Region 6 Gulf States award was terminated or what work the Department believed was "promoting or taking part in DEI initiatives." The only information the Department has provided other than the non-specific language in the termination notice came through the press release in which the Department claimed that the Comprehensive Centers writ large "have been forcing radical agendas onto states and systems, including race-based discrimination and gender identity ideology."[3] The press release did not include a single example relating to RMC's Region 6 Gulf States Comprehensive Center, nor could it have given the service plans for Florida, Alabama, and Mississippi.

---

[3] Press Release, *U.S. Department of Education Cancels Divisive and Wasteful Grants under the Comprehensive Centers Program* (Feb. 19, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-cancels-divisive-and-wasteful-grants-under-comprehensive-centers-program.

RMC simply does not engage in any activities that could be considered discriminatory. Rather, our slate of projects for this fiscal year includes addressing chronic absenteeism, supporting implementation of Alabama's numeracy act to improve mathematics teaching, developing a system to evaluate school administrators, providing Florida's teachers with high quality instructional materials, and reducing teacher turnover in Mississippi's schools. **These projects have been suspended to the detriment of states, schools, and students.**

Moreover, had the Department identified any activities it was concerned about, it had ample opportunity to provide that feedback and work with RMC to address any concerns moving forward. By design, each of RMC's projects takes place at the request of the State education agency and are implemented only after approval from the U. S. Department of Education. **RMC's service plans for Region 6 Gulf States had received approval only days before receiving the termination notice.**

The termination of our award reflects the precise kind of arbitrary enforcement and lack of notice that formed the basis of the preliminary injunction ruling. The termination therefore violates the Due Process Clause.

***

For all of the reasons provided above, the Department's termination of RMC's grant was unlawful, and the award should be immediately reinstated.