S283B240050
Joe Simpson
McREL International
4601 DTC Boulevard, Suite 500
Denver, CO 80237

ED 001202

S283B240050

Nancy Taylor
McREL International
4601 DTC Boulevard, Suite 500
Denver, CO 80237

ED 001203

S283B240050



# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**1** RECIPIENT NAME

McREL International
4601 DTC Boulevard, Suite 500
Denver, CO 80237

**2** AWARD INFORMATION

| | |
|---|---|
| PR/AWARD NUMBER | S283B240050 |
| ACTION NUMBER | 1 |
| ACTION TYPE | New |
| AWARD TYPE | Discretionary |

**3** PROJECT STAFF

RECIPIENT PROJECT DIRECTOR
  Joe Simpson      (307) 286-9653
  jsimpson@mcrel.org
EDUCATION PROGRAM CONTACT
  Rebekka Meyer      (202) 453-5641
  rebekka.meyer@ed.gov
EDUCATION PAYMENT HOTLINE
  G5 PAYEE HELPDESK    888-336-8930
  obssed@servicenowservices.com

**4** PROJECT TITLE

84.283B
Region 8 Comprehensive Center (R8CC)

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Joe Simpson | Project Director | 75 % |
| Katie Allen | Co-Deputy Director | 60 % |
| Richard Resendez | Co-Deputy Director | 60 % |

**6** AWARD PERIODS

| | |
|---|---|
| BUDGET PERIOD | 10/01/2024 - 09/30/2025 |
| PERFORMANCE PERIOD | 10/01/2024 - 09/30/2029 |

FUTURE BUDGET PERIODS

| BUDGET PERIOD | DATE | AMOUNT |
|---|---|---|
| 2 | 10/01/2025 - 09/30/2026 | $2,379,571.00 |
| 3 | 10/01/2026 - 09/30/2027 | $2,379,571.00 |
| 4 | 10/01/2027 - 09/30/2028 | $2,379,571.00 |
| 5 | 10/01/2028 - 09/30/2029 | $2,379,571.00 |

**7** AUTHORIZED FUNDING

| | |
|---|---|
| THIS ACTION | $2,379,571.00 |
| BUDGET PERIOD | $2,379,571.00 |
| PERFORMANCE PERIOD | $2,379,571.00 |

**8** ADMINISTRATIVE INFORMATION

| | |
|---|---|
| UEI | G568H8G8UZ11 |
| REGULATIONS | CFR PART x |
| | EDGAR AS APPLICABLE |
| | 2 CFR AS APPLICABLE |
| ATTACHMENTS | 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , 17D , 18D , B OESE , GE1 , GE2 , GE3 , GE4 , GE5 |

**9** LEGISLATIVE AND FISCAL DATA

| | |
|---|---|
| AUTHORITY: | PL X X X |
| PROGRAM TITLE: | COMPREHENSIVE REGIONAL ASSISTANCE CENTERS |

ED 001204

S283B240050



## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

CFDA/SUBPROGRAM NO:          84.283B

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 1000A | 2024 | 2024 | ES000000 | B | Q2J | 000 | 283 | 4101C | $2,379,571.00 |

**10**

PR/AWARD NUMBER:                    S283B240050
RECIPIENT NAME:                         McREL International
GRANTEE NAME:                           MCREL INTERNATIONAL
                                                       4601 DTC BLVD, STE 500
                                                       DENVER, CO 80237 - 2596
PROGRAM INDIRECT COST TYPE:    Unrestricted
PROJECT INDIRECT COST RATE:      28.7%

TERMS AND CONDITIONS

(1)    THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:

1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180; NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIAL TERMS AND CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.

THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF:

1) CONGRESS HAS APPROPRIATED SUFFICIENT FUNDS UNDER THE PROGRAM;
2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT;
3) THE GRANTEE HAS MADE SUBSTANTIAL PROGRESS TOWARD MEETING THE GOALS AND OBJECTIVES OF THE PROJECT;
4) THE SECRETARY ESTABLISHED PERFORMANCE MEASUREMENT REQUIREMENTS FOR THE GRANT IN THE APPLICATION NOTICE, THE PERFORMANCE TARGETS IN THE GRANTEE'S APPROVED APPLICATION;
5) THE RECIPIENT HAS SUBMITTED REPORTS OF PROJECT PERFORMANCE AND BUDGET EXPENDITURES THAT MEET THE REPORTING REQUIREMENTS FOUND AT 34 CFR 75.118, 2 CFR 200.328 AND 200.329, AND ANY OTHER REPORTING REQUIREMENTS ESTABLISHED BY THE SECRETARY; AND
6) THE GRANTEE HAS MAINTAINED FINANCIAL AND ADMINISTRATIVE MANAGEMENT SYSTEMS THAT MEET THE REQUIREMENTS IN 2 CFR 200.302, FINANCIAL MANAGEMENT, AND 2 CFR 200.303, INTERNAL CONTROLS.

IN ACCORDANCE WITH 2 CFR 200.308(c)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.

THE SECRETARY ANTICIPATES FUTURE FUNDING FOR THIS AWARD ACCORDING TO THE SCHEDULE IDENTIFIED IN BLOCK 6. THESE FIGURES ARE ESTIMATES ONLY AND DO NOT BIND THE SECRETARY TO FUNDING THE AWARD FOR THESE PERIODS OR FOR THE SPECIFIC AMOUNTS SHOWN. THE RECIPIENT WILL BE NOTIFIED OF SPECIFIC FUTURE FUNDING ACTIONS THAT THE SECRETARY TAKES FOR THIS AWARD.

ED 001205

S283B240050



## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

(2)   The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made under this grant. The term subaward means:
1. A legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient. (See 2 CFR 200.331(a))
2. The term does not include your procurement of property and services needed to carry out the project or program (The payments received for goods or services provided as a contractor are not Federal awards, see 2 CFR 200.501(f) of the OMB Uniform Guidance: "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards").
3. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract. (See 2 CFR 200.1)

(3)   Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(4)   In accordance with 34 CFR 75.234(b), this award is classified as a cooperative agreement and will include substantial involvement on the part of the education program contact identified in Block 3. This award is made with the condition that the recipient and the U.S. Department of Education (Department) establish within 60 days of award, and successfully maintain, a cooperative agreement, which delineates the special provisions between the Department and the recipient, signed by both parties.

If you wish to request reconsideration of these specific conditions, please send written notification describing why such conditions should not be imposed on this grant to your Department program officer.

(5)   Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions. The negotiated indirect cost rate agreement authorizes a non-Federal entity to draw down indirect costs from the grant awards. The following conditions apply to the below entities.

A. All entities (other than institutions of higher education (IHE))

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under EDGAR or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of higher education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant s project period, the indirect cost rate

ED 001206

S283B240050

## US Department of Education
### Washington, D.C. 20202

## GRANT AWARD NOTIFICATION

set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6)    In accordance with 35 CFR 75.234(b), this award is classified as a cooperative agreement and will include substantial involvement on the part of the education program contact identified in block 3. This award is made with the condition that the recipient and the U.S. Department of Education successfully maintain its current cooperative agreement, which delineates the special provisions between the U.S. Department of Education and the recipient, signed by both parties.

If you wish to request reconsideration of this/these specific condition(s), please send written notification describing why such condition(s) should not be imposed on this grant to your Department program officer.

JEAN MARCHOWSKY    Digitally signed by JEAN MARCHOWSKY
Date: 2024.09.26 16:41:52 -04'00'

_____    _____

**AUTHORIZING OFFICIAL**    **DATE**

Ver. 1

ED 001207

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**        (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -** Unique items of information that identify this notification.

    **PR/AWARD NUMBER -** A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER -** A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE -** The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE -** The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -** This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR -** The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT -** The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT -** The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -** Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE -** The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -** This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI -** The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

ED 001208

**\*REGULATIONS –** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS –** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA –** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS –** The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award.

**AMOUNT –** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS –** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER –** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME –** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE –** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE –** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL –** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF –** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT –** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT –** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT –** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE –** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
### & CHIEF INFORMATION OFFICER

Joe Simpson
McREL International
4601 DTC Boulevard, Suite 500

Denver, CO 80237

SUBJECT: Payee Verification for Grant Award S283B240050

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: G568H8G8UZ11
Grantee Name: MCREL INTERNATIONAL

Payee UEI: G568H8G8UZ11
Payee Name: MCREL INTERNATIONAL

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

> U.S. Department of Education
> 550 12th Street, SW
> Room 6087
> Washington, DC 20202
>
> Attn: Stephanie Barnes
> Phone: 202-245-8006

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS**:

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, and 34 CFR § 75.720.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation.

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2. Program income was earned;

1

ED 001211

3.  Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;
4.  Program regulations or statute require the submission of the FFR; or
5.  Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1.  Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2.  Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3.  Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4.  Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR 200.328).

When completing an FFR for submission, the following must be noted:

1.  *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the FFR are not applicable to Department grants.

2.  *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

2

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 10% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate. The de minimis rate of 10% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $25,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $25,000. Other items, including contract costs in excess of $25,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (see definition of MTDC at 2 CFR § 200.1).

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with EDGAR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate. The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States [1] as defined in 2 CFR § 200.1

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a). A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC. A State or local government [2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate. Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated. If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a). Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.
[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

3

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

**ED 001214**

## AN OVERVIEW OF SINGLE AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Single Audit Requirements for States, Local Governments and Nonprofit Organizations:**

1. Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $750,000 or more during the non-Federal entity's fiscal year in Federal awards must have a single audit conducted in accordance with 2 CFR 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2. Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program–specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3. Exemption when Federal awards expended are less than $750,000.  A non-Federal entity that expends less than $750,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4. Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity.

5. Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR 200.512, including Form SF-SAC: Data Collection Form electronically to the Federal Audit Clearinghouse at:

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

ED 001215

https://facides.census.gov/Account/Login.aspx.

The audit must be completed, and the data collection form and reporting package must be submitted within the earlier of 30 calendar days after receipt of the auditor's report(s), or nine months after the end of the audit period.  If the due date falls on a Saturday, Sunday, or Federal holiday, the reporting package is due the next business day.  Unless restricted by Federal statutes or regulations, the auditee must make copies available for public inspection.  Auditees and auditors must ensure that their respective parts of the reporting package do not include protected personally identifiable information. (2 CFR 200.512)

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their cognizant agency for single audit technical assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides the predominant amount of direct funding to the recipient."  Grantees should obtain a copy of the OMB Compliance supplement.  This supplement will be instructive to both grantees and their auditors. Appendix III of the supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on single audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column) then click Office of Federal Financial Management (to obtain OMB Compliance Supplement).  The SF-SAC: Data Collection Form can be found at the Federal Audit Clearinghouse at: https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff at www.aicpa.org.

ED 001216

**GAN ATTACHMENT 6**
**Revised 03/2021**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307.

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

_____ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

_____ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

_____ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

1

**GAN ATTACHMENT 8**
**Revised 03/2021**

### TRAFFICKING IN PERSONS

The Department of Education adopts the requirements in the Code of Federal Regulations at 2 CFR 175 and incorporates those requirements into this grant through this condition. The grant condition specified in 2 CFR 175.15(b) is incorporated into this grant with the following changes. Paragraphs a.2.ii.B and b.2. ii. are revised to read as follows:

> "a.2.ii.B. Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 34 CFR part 85."

> "b.2. ii. Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 34 CFR part 85."

Under this condition, the Secretary may terminate this grant without penalty for any violation of these provisions by the grantee, its employees, or its subrecipients.

ED 001218

FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT
REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
3. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. *Reporting of First-tier Subawards -*

a. *Applicability and what to report.*

Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

b. *Where and when to report.*

The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2020, the obligation must be reported by no later than December 31, 2020.

2. *Reporting Total Compensation of the Department's Grant Recipients' Executives -*

ED 001219

a.  *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii   In the preceding fiscal year, you received—

    A.  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

    B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and,**

    C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at SEC Investor.gov Executive Compensation.)

b.  *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.    As part of your registration profile at SAM.gov.

ii.   By the end of the month following the month in which this award is made (for example, if the obligation was made on November 7, 2020 the executive compensation must be reported by no later than December 31, 2020), and annually thereafter.

**3.  *Reporting of Total Compensation of Subrecipient Executives –***

a.  *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

i.    In the subrecipient's preceding fiscal year, the subrecipient received—

ED 001220

    A.  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

    B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and,**

    C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at SEC Investor.gov Executive Compensation.)

b.  *Where and when to report.*

You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

i.  In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

ii.  By the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2020 the subrecipient's executive compensation must be reported by no later than December 31, 2020.

**4.  *Exemptions* –**

a.  If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i.  Subawards, and

ii.  The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.  *Definitions* -**

a.  For purposes of this award term:

i.  Federal *Agency* means a Federal agency as defined at 5 U.S.C. 551(1) and further clarified by 5 U.S.C. 552(f).

ii.  Non-Federal *Entity* means all of the following, as defined in 2 CFR part 25:

A Governmental organization, which is a State, local government, or Indian tribe;

ED 001221

A foreign public entity;

A domestic or foreign nonprofit organization; and,

A domestic or foreign for-profit organization

iii.    *Executive* means officers, managing partners, or any other employees in management positions.

iv.    *Obligation*, when used in connection with a non-Federal entity's utilization of funds under a Federal award, means orders placed for property and services, contracts and subawards made, and similar transactions during a given period that require payment by the non-Federal entity during the same or a future period.

v.    *Subaward:*

This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

The term does not include your procurement of property and services (such as payments to a contractor, small purchase agreements, vendor agreements, and consultant agreements) that are needed for the benefit of the prime awardee to carry out the project or program (for further explanation, see 2 CFR 200.331).  For example, the following are not considered subawards:

> *Cleaning Vendors:* Vendors that are hired by a grantee to clean its facility.
> *Payroll Services Vendors:* Vendors that carryout payroll functions for the grantee.
> *Information Technology Vendors:* Vendors that provide IT support to grant staff.

Payments to individuals that are beneficiaries of Federal programs are not considered subawards.

A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

v.    *Subrecipient* means a non-Federal entity or Federal agency that:

Receives a subaward from you (the recipient) under this award; and

Is accountable to you for the use of the Federal funds provided by the subaward.

In accordance with its subaward, uses the Federal funds to carry out a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the Department prime awardee.

4

vii.  *Recipient* means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients.  See also §200.69 Non-Federal entity.

viii.  *Total compensation* means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

Salary and bonus.

Awards of stock, stock options, and stock appreciation rights.  Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

Earnings for services under non-equity incentive plans.  This does not include group life, health, hospitalization, or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

Change in pension value.  This is the change in present value of defined benefit and actuarial pension plans.

Above-market earnings on deferred compensation which is not tax-qualified.

Other compensation, if the aggregate value of all such other compensation (e.g., severance, termination payments, value of life insurance paid on behalf of the employee, perquisites, or property) for the executive exceeds $10,000.

ED 001223

**GAN ATTACHMENT 11**
**Revised 03/2021**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

Recipients must comply with these conditions under Division H, Title V, Section 505 of Public Law 116-260, Consolidated Appropriations Act, 2021.

ED 001224

**GAN ATTACHMENT 12**
**Revised 03/2021**

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
## DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, sub recipients and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

1

**ED 001225**

**GAN ATTACMENT 13**
**Revised 03/2021**

## REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM)

The U.S. Department of Education (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, in order to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number with the SAM, the U.S. Federal Government's primary registrant database.  If the payee UEI number is different than your grantee UEI number, both numbers must be registered in the SAM. Failure to do so will delay the receipt of payments from the Department.

A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with the SAM, you can easily register by going to www.sam.gov.  Please allow 3-5 business days to complete the registration process.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the SAM Federal Service Desk at 866-606-8220.

If you are currently registered with SAM, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

ED 001226

**GAN ATTACHEMENT 14**
**Revised 03/2021**

## SYSTEM FOR AWARD MANAGEMENT AND UNIVERSAL IDENTIFIER REQUIREMENTS

**1.    Requirement for System for Award Management (SAM)**

Unless you are exempted from this requirement under 2 CFR 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in the SAM database after your initial registration, you are required to review and update your information in the SAM database on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

**2.    Requirement for Unique Entity Identifier (UEI) Numbers**

If you are authorized to make subawards under this award, you:

1.  Must notify potential subrecipients that they may not receive a subaward from you unless they provided their UEI  number to you.
2.  May not make a subaward to a subrecipient when the subrecipient fails to provide its UEI number to you.

**3.    Definitions**

For purposes of this award term:

1.  System for Award Management (SAM) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient.  Additional information about registration procedures may be found at the SAM internet site (currently at https://www.sam.gov).

2.  Unique Entity Identifier (UEI) means the identifier assigned by SAM registration to uniquely identify business entities.

3.  Recipient means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program.  The term recipient does not include subrecipients.  See 2 CFR 200.86.

4.  Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a Federal award received by the pass-through entity.  It does not include payments to a contractor or payments to an individual that is a beneficiary of a Federal program.  A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract. See 2 CFR 200.92.

1

ED 001227

5.  Subrecipient means a non-Federal entity that receives a subaward from a pass-through entity to carry out part of a Federal program; but does not include an individual that is a beneficiary of such program.  A subrecipient may also be a recipient of other Federal awards directly from a Federal awarding agency. See 2 CFR 200.93.

ED 001228

### PARTICIPATION OF FAITH-BASED ORGANIZATIONS

1. A faith-based organization that participates in this program retains its independence from the Government and may continue to carry out its mission consistent with religious freedom and conscience protections in Federal law.

2. A faith-based organization may not use direct Federal financial assistance from the Department to support or engage in any explicitly religious activities except when consistent with the Establishment Clause of the First Amendment and any other applicable requirements. Such an organization also may not, in providing services funded by the Department, or in outreach activities related to such services, discriminate against a program beneficiary or prospective program beneficiary on the basis of religion, a religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

3. If a grantee under a discretionary grant program of the Department has the authority under the grant to select a private organization to provide services supported by direct Federal financial assistance under the program by subgrant, contract, or other agreement, the grantee must ensure compliance with applicable Federal requirements governing contracts, grants, and other agreements with faith-based organizations, including, as applicable, (Education Department General Administrative Regulations) EDGAR §§ 75.52 and 75.532, Appendices A and B to 34 C.F.R. Part 75, and 2 C.F.R. § 3474.15 (see EDGAR § 75.714).

**WRITTEN NOTICE OF BENEFICIARY PROTECTIONS**

In accordance with the Education Department General Administrative Regulations (EDGAR), 34 C.F.R. § 75.712, all grantees providing social services under a Department program supported by direct Federal financial assistance (e.g., programs that provide or support employment, independent living, education, or related services to individuals or groups of individuals) must give written notice to a beneficiary or prospective beneficiary of certain protections.

The written notice that an organization uses to notify beneficiaries or prospective beneficiaries of certain religious non-discrimination protections must include language substantially similar to that in Appendix C to 34 C.F.R. Part 75. Grantees have discretion regarding how to provide the notice, which may include providing the notice directly to each beneficiary, posting it on the grantee's website, or other means. A grantee or subgrantee that participates in multiple Department programs may provide a single notice covering all applicable programs. Additionally, grantees must ensure that the notice is accessible to individuals with disabilities and limited English proficient individuals as required by law. **Unless notified by the applicable program office, a grantee is not required to include in the notice the information in paragraph (5) of Appendix C to 34 C.F.R. Part 75 , i.e., the opportunity of a beneficiary to receive information about other similar providers.**

**Appendix C to 34 C.F.R. Part 75**

Name of Organization:

Name of Program:

Contact Information for Program Staff: [provide name, phone number, and email address, if appropriate]

Because this program is supported in whole or in part by financial assistance from the U.S. Department of Education, we are required to provide you the following information:

(1) We may not discriminate against you on the basis of religion, a religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

(2) We may not require you to attend or participate in any explicitly religious activities (including activities that involve overt religious content such as worship, religious instruction, or proselytization) that may be offered by our organization, and any participation by you in such activities must be purely voluntary.

(3) We must separate in time or location any privately funded explicitly religious activities (including activities that involve overt religious content such as worship, religious instruction, or proselytization) from activities supported with direct Federal financial assistance.

(4) You may report violations of these protection, including any denials of services or benefits by an organization, by filing a written complaint with the U.S. Department of Education at BeneficiaryNoticeComplaints@ed.gov.

[When required by the Department, the notice must also state:] (5) If you would like information about whether there are any other federally funded organizations that provide the services available under this program in your area, please contact the awarding agency.

This written notice must be given to you before you enroll in the program or receive services from the program, unless the nature of the service provided, or exigent circumstances make it impracticable to provide such notice before we provide the actual service. In such an instance, this notice must be given to you at the earliest available opportunity.

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report.  The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED.  YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins.  The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made.  The report is due more frequently than annually as indicated:

_____Quarterly  Submit within 30 days after the end of each quarter.

_____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED.  IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant.  The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

\_\_\_\_\_Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition

**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1.  While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees. With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.

2.  Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h). A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency. An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate. A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate. A restricted rate program grantee (such as one with a supplement-not-supplant grant provision) that has not negotiated an indirect cost rate agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4.  Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change. Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.   Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5.   If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

ED 001233

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment so as to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations in 34 CFR (EDGAR) 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

The Education Department General Administrative Regulations (EDGAR)

 2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics discuss requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics discussed are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well, because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to assure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding  the topics discussed on page 2, "Selected Topics in Administering Department Discretionary Grants,"or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

ED 001234

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

**I.     Financial Management Systems (2 CFR Part 200.302)**

In general, grantees are required to have financial management systems that:

* provide for accurate, current, and complete disclosure of results regarding the use of funds under grant projects;
* provide adequate source documentation for Federal and non-Federal funds used under grant projects;
* contain procedures to determine the allowability, allocability, and reasonableness of obligations and expenditures made by the grantee; and
* enable the grantee to maintain effective internal control and fund accountability procedures, e.g., requiring separation of functions so that the person who makes obligations for the grantee is not the same person who signs the checks to disburse the funds for those obligations.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and cost-type contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

**II.     Federal Payment (2 CFR Part 200.305)**

Under this part --

* the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
* grantees repay to the Federal government interest earned on advances; and
* grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant. Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury. In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.

ED 001235

The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

### III.    Personnel (EDGAR §§ 75.511-75.519 and 2 CFR Part 200 Subpart D and E)

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR Part 200.308 (c)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the cost principles in 2 CFR Part 200 Subpart D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

### IV.    Cost Principles (2 CFR Part 200 Subpart E)

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide lists of selected items of allowable and unallowable costs, and must be used in determining the allowable costs of work performed under the grant.

### V.    Procurement Standards (2 CFR Part 200.317-327)

Under 2 CFR Part 200.317, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

### VI.    Indirect Costs (EDGAR §§75.560-564 and 2 CFR Part 200.414)

In addition to the information presented beslow, see GAN ATTACHMENT 4 for addional information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates.

A.   Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate, a grantee must have an indirect cost agreement with its cognizant agency, submit an indirect cost rate proposal to its cognizant agency for indirect

ED 001236

GAN ENCLOSURE 1
Revised 03/2021

costs (cognizant agency) within 90 days after the award of this grant or elect to utilize the de minimis rate under 2 CFR § 200.414(f) or the temporary indirect cost rate (subject to limitations described below).

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

B.  Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR § 75.560(c)); or it may choose not to charge indirect costs to the grant. The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.  De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally-recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including provisional) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis indirect cost rate of 10% of modified total direct costs (MTDC). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $25,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $25,000. Other items, including contract costs in excess of $25,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (see definition of MTDC at 2 CFR § 200.1).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost rate. The de minimis rate may be used indefinitely. However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all of its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant agency. Once a grantee obtains a federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

ED 001237

D.  Programs with a Supplement-not-supplant requirement (restricted indirect cost rate)

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.  Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[3], the grantee must negotiate a rate under 34 CFR 75.562. This provision limits indirect cost recovery to 8% of modified total direct costs or the grantees negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

i.  The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
ii.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
iv.  A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.  Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $750,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for

---

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

ED 001238

**GAN ENCLOSURE 1**
**Revised 03/2021**

audits done in connection with the law.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

## VIII.    Other Considerations

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR Part 200.307), cost sharing or matching (2 CFR Part 200.306), property management requirements for equipment and other capital expenditures (2 CFR Parts 200.313, 200.439).

ED 001239

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

ED 001240

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

2

ED 001241

GAN ENCLOSURE 3
Revised 03/2021

## THE USE OF GRANT FUNDS FOR CONFERENCES AND MEETINGS

You are receiving this memorandum to remind you that grantees must take into account the following factors when considering the use of grant funds for conferences and meetings:

- Before deciding to use grant funds to attend or host a meeting or conference, a grantee should:
    - Ensure that attending or hosting a conference or meeting is consistent with its approved application and is reasonable and necessary to achieve the goals and objectives of the grant;
    - Ensure that the primary purpose of the meeting or conference is to disseminate technical information, (e.g., provide information on specific programmatic requirements, best practices in a particular field, or theoretical, empirical, or methodological advances made in a particular field; conduct training or professional development; plan/coordinate the work being done under the grant); and
    - Consider whether there are more effective or efficient alternatives that can accomplish the desired results at a lower cost, for example, using webinars or video conferencing.
- Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable and necessary, especially the Cost Principles for Federal grants set out at 2 CFR Part 200 Subpart E of the, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards."  In particular, remember that:
    - Federal grant funds cannot be used to pay for alcoholic beverages; and
    - Federal grant funds cannot be used to pay for entertainment, which includes costs for amusement, diversion, and social activities.
- Grant funds may be used to pay for the costs of attending a conference.  Specifically, Federal grant funds may be used to pay for conference fees and travel expenses (transportation, per diem, and lodging) of grantee employees, consultants, or experts to attend a conference or meeting if those expenses are reasonable and necessary to achieve the purposes of the grant.
    - When planning to use grant funds for attending a meeting or conference, grantees should consider how many people should attend the meeting or conference on their behalf.  The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant.
- A grantee hosting a meeting or conference may not use grant funds to pay for food for conference attendees unless doing so is necessary to accomplish legitimate meeting or conference business.
    - A working lunch is an example of a cost for food that might be allowable under a Federal grant if attendance at the lunch is needed to ensure the full participation by conference attendees in essential discussions and speeches concerning the purpose of the conference and to achieve the goals and objectives of the project.
- A meeting or conference hosted by a grantee and charged to a Department grant must not be promoted as a U.S. Department of Education conference.  This means that the seal of the U.S. Department of Education must not be used on conference materials or signage without Department approval.

ED 001242

**GAN ENCLOSURE 3**
**Revised 03/2021**

- o   All meeting or conference materials paid for with grant funds must include appropriate disclaimers, such as the following:

  > The contents of this (insert type of publication; e.g., book, report, film) were developed under a grant from the Department of Education.  However, those contents do not necessarily represent the policy of the Department of Education, and you should not assume endorsement by the Federal Government.

- Grantees are strongly encouraged to contact their project officer with any questions or concerns about whether using grant funds for a meeting or conference is allowable prior to committing grant funds for such purposes.

  - o   A short conversation could help avoid a costly and embarrassing mistake.

- Grantees are responsible for the proper use of their grant awards and may have to repay funds to the Department if they violate the rules on the use of grant funds, including the rules for meeting- and conference-related expenses.

**ED 001243**

GAN ENCLOSURE 4
Revised 03/2021

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information. A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department. The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1.  Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2.  Payments to States under programs that are not covered by a TSA; and

3.  Payments to other non-Federal entities, including nonprofit organizations and local governments.

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A. Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15. If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205. These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities. The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs. 31 CFR § 205.33(a). States should exercise sound cash management in funds transfers to subgrantees.

---

[1] The Department adopted the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

ED 001244

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "payments methods must minimize the time elapsing between the transfer of funds from the United States Treasury or the pass-through entity and the disbursement by the non-Federal entity." 2 CFR § 200.305(b) introduction.

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the non-Federal entity, and financial management systems that meet the standards for fund control and accountability."  2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (4) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(8) for those conditions.  The requirements regarding interest accrual and remittance follow:

Grantees and subgrantees must annually remit interest earned on federal advance payments except that interest earned amounts up to $500 per year may be retained for administrative expense. Any additional interest earned on Federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. 2 CFR § 200.305(b)(9)(i) and (ii).

1.  When returning interest through ACH Direct Deposit or Fedwire, grantees must include the following in their return transaction:

    - PMS Account Number (PAN). NOTE: The PAN is the same series of alpha-numeric characters used for payment request purposes (e.g.: C1234G1).
    - PMS document number.
    - The reason for the return (e.g., interest, part interest part other, etc.).
    - An explanation stating that the refund is for interest payable to the Department of Health and Human Services, and the grant number(s) for which the interest was earned.

    a.  U.S. Department of Education grantees are generally located and operate domestically and return interest domestically.  Below is PSC ACH account information for interest returned

ED 001245

domestically.  For international ACH interest returned, account information is available at: Returning Funds/Interest.

- PSC ACH Routing Number is: 051036706
- PSC DFI Accounting Number: 303000
- Bank Name: Credit Gateway - ACH Receiver
- Location: St. Paul, MN

    b.  Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

2.    Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

    a.  Interests returned by check are to be mailed (USPS only) to:

- HHS Program Support Center
  PO Box 979132
  St. Louis, MO 63197

A brief statement explaining the nature of the return must be included.

    b.  To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

3.    For detailed information about how to return interest, visit the PSC Retuning Funds/Interest page at: Returning Funds/Interest

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

ED 001246

1.  Evaluate each subrecipient's risk of noncompliance with Federal statutes, regulations, and the terms and conditions of the subaward for purposes of determining the appropriate subrecipient monitoring.

2.  Monitor the performance and fiscal activities of the subrecipient to ensure that the subaward is used for authorized purposes, in compliance with Federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

ED 001247

**RECIPIENTS OF DEPARTMENT OF EDUCATION GRANTS AND COOPERATIVE AGREEMENTS
FREQUENTLY ASKED QUESTIONS ON CASH MANAGEMENT**

**Q     What are the Federal Laws and Regulations Regarding Payments to the States?**

**A**     The *Cash Management Improvement Act of 1990* (*CMIA*) establishes interest liabilities for the Federal and State governments when the Federal Government makes payments to the States. See 31 U.S.C. 3335 and 6503.  The implementing regulations are in Title 31 of the Code of Federal Regulations (CFR), Part 205, https://www.ecfr.gov/cgi-bin/text-idx?tpl=/ecfrbrowse/Title31/31cfr205_main_02.tpl.  Non-Federal entities other than States follow the rules on Federal payments set out in 2 CFR 200.305.

**Q     What is a Treasury-State Agreement (TSA)?**

**A**     A TSA documents the accepted funding techniques and methods for calculating interest agreed upon by the U.S. Department of the Treasury (Treasury) and a State.  It identifies the Federal assistance programs that are subject to interest liabilities under the CMIA.  The CMIA regulations specify a number of different funding techniques that may be used by a State but a State can negotiate with the Treasury Department to establish a different funding technique for a particular program. A TSA is effective until terminated and, if a state does not have a TSA, payments to the State are subject to the default techniques in the regulations that Treasury determines are appropriate.

**Q     What are the CMIA requirements for a program subject to a Treasury-State Agreement?**

**A**     Payments to a State under a program of the Department are subject to the interest liability requirements of the CMIA if the program is included in the State's Treasury-State Agreement (TSA) with the Department of Treasury.  If the Federal government is late in making a payment to a State, it owes interest to the State from the time the State spent its funds to pay for expenditure until the time the Federal government deposits funds to the State's account to pay for the expenditure.  Conversely, if a State is late in making a payment under a program of the Department, the State owes interest to the Federal government from the time the Federal government deposited the funds to the State's account until the State uses those funds to make a payment.  For more information, GAN Enclosure 4.

**Q     What are the CMIA requirements for a program that is not subject to a Treasury-State Agreement?**

**A**     If a program is not included in the State's TSA, neither the State nor the Federal government are liable for interest for making late payments.  However, both the Federal government and the State must minimize the time elapsing between the date the State requests funds and the date that the funds are deposited to the State's accounts.  The State is also required to minimize the time elapsed between the date it receives funds from the Federal government and the date it makes a payment under the program,  Also, the Department must minimize the amount of funds transferred to a State to only that needed to meet the immediate cash needs of the State.  The timing and amount of funds transferred must be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.

**Q     What if there is no TSA?**

ED 001248

A    When a State does not have a TSA in effect, default procedures in 31 CFR, part 205 that the Treasury Department determines appropriate apply.  The default procedures will prescribe efficient funds transfer procedures consistent with State and Federal law and identify the covered Federal assistance programs and designated funding techniques.


**Q    Who is responsible for Cash Management?**
A    Grantees and subgrantees that receive grant funds under programs of the Department are responsible for maintaining internal controls regarding the management of Federal program funds under the Uniform Guidance in 2 CFR 200.302 and 200.303.  In addition, grantees are responsible for ensuring that subgrantees are aware of the cash management and requirements in 2 CFR part 200, subpart D.


**Q    Who is responsible for monitoring cash drawdowns to ensure compliance with cash management policies?**
A    Recipients must monitor their own cash drawdowns **and** those of their subrecipients to assure substantial compliance to the standards of timing and amount of advances.


**Q    How soon may I draw down funds from the G5 grants management system?**
A    Grantees are required to minimize the amount of time between the drawdown and the expenditure of funds from their bank accounts.  (See 2 CFR 200.305(b).)  Funds must be drawn only to meet a grantee's immediate cash needs for each individual grant.  The G5 screen displays the following message:

**By submitting this payment request, I certify to the best of my knowledge and belief that the request is based on true, complete, and accurate information. I further certify that the expenditures and disbursements made with these funds are for the purposes and objectives set forth in the applicable Federal award or program participation agreement, and that the organization on behalf of which this submission is being made is and will remain in compliance with the terms and conditions of that award or program participation agreement. I am aware that the provision of any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me, and the organization on behalf of which this submission is being made, to criminal, civil, or administrative penalties for fraud, false statements, false claims, or other violations. (U.S. Code Title 18, Section 1001; Title 20, Section 1097; and Title 31, Sections 3729-3730 and 3801-3812)**


**Q    How may I use Federal funds?**
A    Federal funds must be used as specified in the Grant Award Notification (GAN) and the approved application or State plan for allowable direct costs of the grant and an allocable portion of indirect costs, if authorized.


**Q    What are the consequences to recipients/subrecipients for not complying with terms of the grant award?**
A    If a recipient or subrecipient materially fails to comply with any term of an award, whether stated in a Federal statute or regulation, including those in 2 CFR part 200, an assurance, the GAN, or elsewhere, the awarding agency may in accordance with 2 CFR 200.339 take one or more of the following actions:

ED 001249

1. Temporarily withhold cash payments pending correction of the deficiency by the non-Federal entity or more severe enforcement action by the Federal awarding agency or pass-through entity.
2. Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity not in compliance.
3. Wholly or partly suspend or terminate the Federal award.
4. Initiate suspension or debarment proceedings as authorized under 2 CFR part 180 and Federal award agency regulations (or in the case of a pass-through be initiated by a Federal awarding agency).
5. Withhold further Federal awards for the project or program.
6. Take other remedies that may be legally available.

**Q**   **Who is responsible for determining the amount of interest owed to the Federal government?**

**A**   As set forth in 31 CFR 205.9, the method used to calculate and document interest liabilities is included in the State's TSA.  A non-State entity must maintain advances of Federal funds in interest-bearing accounts unless certain limited circumstance apply and remit interest earned on those funds to the Department of Health and Human Services, Payment Management System annually.  See 2 CFR 200.305.

**Q**   **What information should accompany my interest payment?**

**A**   In accordance with 2 CFR 200.305(b)(9), interest in access of $500.00 earned on Federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment.

For returning interest on Federal awards paid through PMS, the refund should:
(a) Provide an explanation stating that the refund is for interest;
(b) List the PMS Payee Account Number(s) (PANs);
(c) List the Federal award number(s) for which the interest was earned; and
(d) Make returns payable to: Department of Health and Human Services.

For returning interest on Federal awards not paid through PMS, the refund should:
(a) Provide an explanation stating that the refund is for interest;
(b) Include the name of the awarding agency;
(c) List the Federal award number(s) for which the interest was earned; and
(d) Make returns payable to: Department of Health and Human Services.

For additional information about returning interest see GAN ATTACHMENT 4.

**Q**   **Are grant recipients/subrecipients automatically permitted to draw funds in advance of the time they need to disburse funds in order to liquidate obligations?**

**A**    The payment requirements in 2 CFR 200.305(b) authorize a grantee or subgrantee to request funds in advance of expenditures if certain conditions are met.  However, if those conditions are not met, the Department and a pass-through agency may place a payee on reimbursement.

ED 001250

**Q**    **For formula grant programs such as ESEA Title I, for which States distribute funds to LEAs, may States choose to pay LEAs on a reimbursement basis?**

**A**    A subgrantee must be paid in advance if it meets the standards for advance payments in 2 CFR 200.305(b)(1) but if the subgrantee cannot meet those standards, the State may put the subgrantee on reimbursement payment.  See 2 CFR 200.305(b).


**Q**    **Will the Department issue special procedures in advance if G5 plans to shut down for 3 days or more?**

**A**    Yes, before any shutdown of G5 lasting three days or more, the Department issues special guidance for drawing down funds during the shut down.  The guidance will include cash management improvement act procedures for States and certain State institutions of higher education and procedures for grants (including Pell grants) that are not subject to CMIA.

ED 001251

| From: | Washington, Mark |
|---|---|
| To: | Joe Simpson |
| Cc: | Ryder, Ruth; Hoffman, Amanda; Weems, Kia; Williams, Damien |
| Subject: | GRANT AWARD TERMINATION: S283B240050_MCREL_INTERNATIONAL.pdf |
| Date: | Wednesday, February 19, 2025 4:43:31 PM |
| Attachments: | S283B240050_MCREL_INTERNATIONAL.pdf |
| | image001.png |

Dear Federal Grant Project Director,

Please see the attached letter, informing you of the U.S. Department of Education's decision to terminate your federal grant award, because the grant is now inconsistent with, and no longer effectuates, the Department's priorities.  You will receive an updated GAN notice following this email, confirming the decision and change.  You will also receive notification from the Department's G5 grants administration system.

Please also note the basis for challenge or appeal of this decision, as well as the deadline to respond, as noted in the language of the attached letter. Kindly contact my colleague, Dr. Amanda Hoffman, at Amanda.Hoffman@ed.gov, with any related questions or concerns about this information or the appeals process overall.

Respectfully,


Mark Washington

_____



**Mark Washington**
**Deputy Assistant Secretary**
United States Department of Education
Office of Elementary and Secondary Education
400 Maryland Avenue, SW | Washington, D.C. 20202
Phone: (202) 205-0167 | Mobile: (202) 549-9956  |  Email: mark.washington@ed.gov



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SECONDARY AND ELEMENTARY EDUCATION
OFFICE OF ADMINISTRATION

2/19/2025

Joe  Simpson
Project Director
MCREL INTERNATIONAL
4601 DTC Boulevard, Suite 500
Denver, CO 80237

RE: Grant Award Termination

Dear Joe  Simpson    :

This letter provides notice that the United States Department of Education is terminating your federal award,  S283B240050    . *See* 2 C.F.R. § 200.340-43; *see also* 34 C.F.R. § 75.253.

It is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States. The Acting Secretary of Education has determined that, per the Department's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives or any other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic. Illegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education. In addition to complying with the civil rights laws, it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4); *see also* 34 C.F.R. § 75.253. Therefore, pursuant to, among other authorities, 2 C.F.R. § 200.339-43, 34 C.F.R. § 75.253, and the termination provisions in your grant award, the Department hereby terminates grant No.  S283B240050    in its entirety effective   2/19/2025    .

400 MARYLAND AVE., S.W., WASHINGTON, DC  20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 001253

If you wish to object to or challenge this termination decision, you must submit information and documentation supporting your position in writing within 30 calendar days of the date of this termination notice. Objections and challenges must be sent by email and first-class mail and addressed to the component head that oversees the grantmaking unit, which will typically be the Assistant Secretary of that unit. In this case, please address your objection or challenge to Ruth Ryder, Acting Assistant Secretary; Office of Elementary and Secondary Education; 400 Maryland Ave., SW; Washington, D.C. 20202; ruth.ryder@ed.gov.

Your appeal should contain the following:
1. a copy of the written notice of termination;
2. the date you received written notice of termination;
3. a brief statement of your argument and the disputed factual, legal, or other issues;
4. the amount of funds or costs in dispute, if any; and
5. any other relevant documents.

*See id.* § 200.342.

Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g). Failure to do so will result in the Department filing a report documenting your "material failure to comply with the terms and conditions of" this award on SAM.gov and taking any other appropriate enforcement actions. *See id.* § 200.344(i).

Finally, you are reminded of your duties under your agreement and Department of Education guidance regarding retention of grant records for at least three years.

Respectfully,

Mark Washington
Deputy Assistant Secretary for Management and Planning

cc: Ruth Ryder

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 001254

S283B240050

Joe Simpson

McREL International

4601 DTC Boulevard, Suite 500

Denver, CO 80237

ED 001255

S283B240050

Nancy Taylor
McREL International
4601 DTC Boulevard, Suite 500
Denver, CO 80237

ED 001256

S283B240050



## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| **1** RECIPIENT NAME | **2** AWARD INFORMATION |
|---|---|
| McREL International<br>4601 DTC Boulevard, Suite 500<br>Denver, CO 80237 | PR/AWARD NUMBER    S283B240050<br>ACTION NUMBER    2<br>ACTION TYPE    Administrative<br>AWARD TYPE    Discretionary |

| **3** PROJECT STAFF | **4** PROJECT TITLE |
|---|---|
| RECIPIENT PROJECT DIRECTOR<br>   Joe Simpson            (307) 286-9653<br>   jsimpson@mcrel.org<br>EDUCATION PROGRAM CONTACT<br>   Rebekka Meyer         (202) 453-5641<br>   rebekka.meyer@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>   G5 PAYEE HELPDESK    888-336-8930<br>   obssed@servicenowservices.com | 84.283B<br>Region 8 Comprehensive Center (R8CC) |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Joe Simpson | Project Director | 75 % |
| Katie Allen | Co-Deputy Director | 60 % |
| Richard Resendez | Co-Deputy Director | 60 % |

**6** AWARD PERIODS

|  |  |
|---|---|
| BUDGET PERIOD | 10/01/2024 - 02/19/2025 |
| PERFORMANCE PERIOD | 10/01/2024 - 02/19/2025 |

FUTURE BUDGET PERIODS

N/A

**7** AUTHORIZED FUNDING

|  |  |
|---|---|
| THIS ACTION | N/A |
| BUDGET PERIOD | $2,379,571.00 |
| PERFORMANCE PERIOD | $2,379,571.00 |

**8** ADMINISTRATIVE INFORMATION

| UEI | G568H8G8UZ11 |
|---|---|
| REGULATIONS | CFR PART x<br>EDGAR AS APPLICABLE<br>2 CFR AS APPLICABLE |
| ATTACHMENTS | N/A |

**9** LEGISLATIVE AND FISCAL DATA

| AUTHORITY: | PL X X X |
|---|---|
| PROGRAM TITLE: | COMPREHENSIVE REGIONAL ASSISTANCE CENTERS |
| CFDA/SUBPROGRAM NO: | 84.283B |

S283B240050



# US Department of Education
# Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**10**

| | |
|---|---|
| PR/AWARD NUMBER: | S283B240050 |
| RECIPIENT NAME: | McREL International |
| GRANTEE NAME: | MCREL INTERNATIONAL |
| | 4601 DTC BLVD, STE 500 |
| | DENVER, CO 80237 - 2596 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 28.7% |

TERMS AND CONDITIONS

(1) THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION.

(2) The grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. 200.340(a)(4); see also 34 C.F.R. 75.253.

LAVANNA WEEMS  Digitally signed by LAVANNA WEEMS
Date: 2025.02.19 17:40:14 -05'00'

**AUTHORIZING OFFICIAL**                **DATE**

Ver. 1

ED 001258

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**       (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**  Unique items of information that identify this notification.

  **PR/AWARD NUMBER -**  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

  **ACTION NUMBER -**  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

  **ACTION TYPE -**  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

  **AWARD TYPE -**  The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -**  This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

  **\*RECIPIENT PROJECT DIRECTOR -**  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

  **EDUCATION PROGRAM CONTACT -**  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

  **EDUCATION PAYMENT CONTACT -**  The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -**  Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**  Project activities and funding are approved with respect to three different time periods, described below:

  **BUDGET PERIOD -**  A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

  **PERFORMANCE PERIOD -**  The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

  **\*FUTURE BUDGET PERIODS -**  The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -**  The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

  **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

  **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

  **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

  **RECIPIENT COST SHARE -**  The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

  **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -**  This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

  **UEI -**        The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

ED 001259

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -**
The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award.

**AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

| | |
|---|---|
| **From:** | Nancy Taylor |
| **To:** | Ryder, Ruth |
| **Cc:** | Washington, Mark; Hoffman, Amanda; Bryan Goodwin; Sue Desch; Dale Lewis |
| **Subject:** | Region 8 CC Appeal Letter |
| **Date:** | Tuesday, March 11, 2025 2:56:20 PM |
| **Attachments:** | Region 8 CC Appeal Letter from McREL - FINAL 031125.pdf |

Some people who received this message don't often get email from ntaylor@mcrel.org. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon Acting Assistant Secretary Ryder,

Pursuant to the grant award termination letter that we received on February 19, 2025 related to PR/Award #S283B240050, McREL is submitting the attached information and documentation for the appeal of the decision.

Once you have a chance to review, please let us know if you have additional questions or need more information – I have copied our President & CEO (Bryan Goodwin), CFO (Sue Desch), and Vice President for Large Programs (Dale Lewis) on this notice.

Respectfully submitted,
Nancy Taylor (sent on behalf of Bryan Goodwin)

Nancy Taylor, MBA (she/her)
Senior Development Manager
**McREL International**
4601 DTC Boulevard, Suite 500
Denver, CO 80237
Phone: 304.347.1863
www.mcrel.org

**From:** Washington, Mark <Mark.Washington@ed.gov>
**Sent:** Wednesday, February 19, 2025 2:43 PM
**To:** Joe Simpson <jsimpson@mcrel.org>
**Cc:** Ryder, Ruth <Ruth.Ryder@ed.gov>; Hoffman, Amanda <Amanda.Hoffman@ed.gov>; Weems, Kia <Kia.Weems@ed.gov>; Williams, Damien <Damien.Williams@ed.gov>
**Subject:** GRANT AWARD TERMINATION: S283B240050_MCREL_INTERNATIONAL.pdf

Dear Federal Grant Project Director,

Please see the attached letter, informing you of the U.S. Department of Education's decision to terminate your federal grant award, because the grant is now inconsistent with, and no longer effectuates, the Department's priorities. You will receive an updated GAN notice following this email, confirming the decision and change. You will also receive notification from the Department's

G5 grants administration system.

Please also note the basis for challenge or appeal of this decision, as well as the deadline to respond, as noted in the language of the attached letter. Kindly contact my colleague, Dr. Amanda Hoffman, at Amanda.Hoffman@ed.gov, with any related questions or concerns about this information or the appeals process overall.

Respectfully,


Mark Washington

ED 001262



*curiosity for better learning*

March 11, 2025

Ruth Ryder
Acting Assistant Secretary
Office of Elementary and Secondary Education
U.S. Department of Education
400 Maryland Ave, SW
Washington, DC 20202
ruth.ryder@ed.gov

Acting Assistant Secretary Ryder,

McREL International (McREL) submits this appeal[1] of the termination of PR/Award # S283B240050 (Region 8 [Central] Comprehensive Center [CC]) pursuant to 2 CFR § 200.342 and the U.S. Department of Education's Grant Termination Appeal Procedures.[2] McREL received notice of the Department's decision to terminate S283B240050 on February 19, 2025. With this appeal, we seek reinstatement of the five-year award. The amount of funds in dispute are as follows: The total five-year grant award amount is $11,897,855, which is broken down equally by fiscal year with grant awards of $2,379,571 in FY2025, $2,379,571 in FY2026, $2,379,571 in FY2027, $2,379,571 in FY2028, and $2,379,571 in FY2029.

McREL, founded in 1966, is a private, nonprofit organization headquartered in Denver, Colorado. Our extensive experience as a trusted provider of research, evaluation, and technical assistance in the Central Region includes 19 years serving as the grantee for the Region 11 and 12 CCs (2019–2024) and the North Central CC (2005–2019), as well as 40-plus years operating the Regional Educational Laboratory for the Central Region (REL Central) (1966–2012). McREL submitted its application to lead the FY2025–2029 Region 8 CC on June 21, 2024.

We received a Grant Award Notification (GAN) for the Region 8 CC on September 25, 2024. The grant included a period of performance from October 1, 2024 to September 30, 2029. With respect to any potential termination of the award, the sole references to termination were that the Department could terminate if "a recipient or subrecipient materially fails to comply with any term of an award," or if "the grantee, its employees, or its subrecipients" engaged in prohibited trafficking in persons. In the cooperative agreement that we subsequently entered into, the sole reference to potential termination was that "failure to comply with the content of this agreement may result in . . . suspending or terminating the award, pursuant to 2 CFR §200.339-343."

---

[1] In submitting this appeal letter, we reserve all rights to seek relief in an appropriate judicial forum at any time. Our omission of any legal claim from this letter does not constitute a waiver of the right to assert that claim in any future legal challenge.

[2] https://www.ed.gov/media/document/grant-appeals-procedure-109496.pdf

McREL is a nonprofit organization that provides schools and education systems with research, analysis, and professional learning services that spark curiosity and help all teachers, leaders, and students flourish.

www.mcrel.org       800.858.6830       info@mcrel.org

ED 001263

McREL
INTERNATIONAL

In the months following receipt of the GAN, McREL's Region 8 CC Director and Deputy Directors met regularly with the Department's Program Officer Rebekka "Bekka" Meyer, participated in virtual meetings held by the Office of Program and Grantee Support Services (PGSS), and attended the in-person project directors meeting held in Washington, D.C. in November 2024. Region 8 CC leadership also collaborated with each state's chief school officer or designee to confirm priorities and the focus for an annual service plan (ASP) for each state, and identify prospective Region 8 CC advisory board members. Draft ASPs were submitted to PGSS on January 24, 2025 along with the Region 8 CC's Year 1 budget and draft communications and dissemination plan. On February 7, 2025, during a regularly scheduled check-in call with Region 8 CC leadership, Program Officer Bekka Meyer stated that PGSS feedback on the ASPs was forthcoming and that the scheduled February 14, 2025 submission of updated ASPs would be delayed to allow additional time for review.

On February 19, 2025, McREL received notice that the Department was terminating our award under the Comprehensive Center program. Awards covering eighteen (18) of the twenty (20) Comprehensive Centers were terminated with identical notices alleging that the award "provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States."[3] Prior to receiving this notification, we had no indication that the Department had any concerns with our implementation of the award. In fact, Program Officer Bekka Meyer, in her reply to email communication from Project Director Joe Simpson confirming receipt of the termination notice and revised GAN, stated that she enjoyed and was grateful for her work with Project Director Simpson.[4]

For the reasons described below, the termination of our grant was contrary to multiple statutes, constitutional provisions, and regulations, and was also arbitrary and capricious. We respectfully request that the Department reinstate our grants immediately so we can continue to serve the students, teachers, and communities of the Region 8 (Central) CC.

1. The Termination Violates Department Regulations

In its termination notice, the Department cited a provision of the Uniform Grants Guidance, 2 CFR § 200.340(a)(4), as the legal authority for terminating the grant. The Department claimed that this provision authorizes the Department to terminate a grant that is "inconsistent with, and no longer effectuates, Department priorities." That provision, however, does not authorize the Department to terminate this award based on "Department priorities."

The Department of Education adopts the Office of Management and Budget's (OMB's) Uniform Grants Guidance to serve as the Department's own regulations for federal financial assistance awards. 2 CFR § 3474.1(a). In 2024, OMB revised the Uniform Grants Guidance with an effective date of October 1, 2024. The Department confirmed that the revised Uniform Grants

---

[3] A copy of our termination letter and GAN cancellation is attached as Appendix A to this letter.

[4] Attached as Appendix B, please find a copy of this communication.

ED 001264

Guidance applied to "[a]ny Discretionary grant" awarded by the Department "with a performance period start date on or after October 1, 2024." *Dep't of Education, Frequently Asked Questions, 2 CFR Part 200*, at Q-4.[5] Because the period of performance for this grant began on October 1, 2024, the revised Uniform Grant Guidance applies.

Under the revised Uniform Grants Guidance, the Department may terminate an award based on "program goals or agency priorities" only where such grounds for termination are "clearly and unambiguously" stated in the terms and conditions of the individual award. 2 CFR § 200.340(a)(4), (b); *see also* 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024). There was no such clear and unambiguous language in this award. The terms and conditions make no mention at all that the Department could potentially terminate the award based on the Department's "program goals or agency priorities."

Because this ground for termination was not specified in the award, the Department's termination of the grant was contrary to the Department's applicable regulations and thus contrary to law. The grant must be reinstated in these circumstances. *See, e.g.*, *Healthy Futures of Texas v. Dep't of Health & Human Servs.*, 315 F. Supp. 3d 339, 348 (D.D.C. 2018); *Policy & Research, LLC v. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62 (D.D.C. 2018); *Planned Parenthood of Greater Washington & N. Idaho v. Dep't of Health & Human Servs.*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018); *Healthy Teen Network v. Azar*, 322 F. Supp. 3d 647 (D. Md. 2018).

2.   The Termination Violates the Statute Establishing Comprehensive Centers

In terminating eighteen (18) of the twenty (20) Comprehensive Center awards, including our award, the Department has violated the statute establishing the Comprehensive Center program.

Congress established the Comprehensive Centers through the Educational Technical Assistance Act of 2002. In that Act, Congress mandated that the Department must award "not less than" 20 grants to local entities or groups to serve as Comprehensive Centers. 20 U.S.C. § 9602(a)(1). The Act further directed that the Secretary of Education "shall ensure that not less than 1 comprehensive center is established in each of the 10 geographic regions served by the geographic regions served by the regional educational laboratories." *Id.* § 9602(a)(2)(A).

Congress further created a detailed structure for the Comprehensive Center program, including regional advisory committees and directives on how the Comprehensive Centers would interact with the Department and local stakeholders. The complicated structure involves coordination with advisory boards, the Department, Regional Educational Laboratories, state agencies, and other regional providers. 20 U.S.C. §§ 9602(f)-(h). This type of coordination takes time and provides the specific mechanisms for each Comprehensive Center to ensure their work is reflective of and responsive to local needs. As such, although Congress did not directly mandate five-year grants, it did require grant applicants to include a five-year implementation plan. *Id.* § 9602(c)(2).

In terminating eighteen (18) out of the twenty (20) Comprehensive Center awards, the Department has effectively shut down this statutorily required program for FY2025, and the

---

[5] https://www.ed.gov/media/document/faqs-uniform-guidance-107433.pdf

ED 001265

Department has not given any indication it intends to correct this violation for future years. Due to the terminations, the Department is failing to maintain "not less than 20 grants" for Comprehensive Centers, and is not "ensur[ing] that not less than 1 comprehensive center is established in each of the 10 geographic regions served by the regional educational laboratories," as required by law. The congressional scheme requiring Comprehensive Centers, regional advisory councils, coordination with stakeholders, annual reports, and five-year programs has been abandoned. Because the complicated structure Congress created is time-consuming to implement, the only way to correct this violation of the Department's statutory requirements is to immediately reinstate the terminated awards, including ours.

3.  The Termination Was Arbitrary and Capricious

The termination of our grant is an "arbitrary and capricious" agency action in violation of the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(A).

The APA's prohibition on arbitrary and capricious agency action requires agencies "to examine all relevant factors and record evidence, and to articulate a reasoned explanation for [their] decision[s]." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). To do so, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action fails to satisfy this standard if the agency "failed to consider an important aspect of the problem, *id.*, or if it "offer[s] an explanation for its decision that runs counter to the evidence before the agency." *Am. Wild Horse*, 873 F.3d at 923.

The Department's termination notice claimed that our performance of the grant violated civil rights laws by promoting or engaging in DEI initiatives. The notice provided no specific examples how our performance under the grant constitutes unlawful action, nor could it have.

Rather, the Department appears to have simply relied on edited videos, posted to X by Christopher Rufo only hours before the termination,[6] of alleged "race-based discrimination and gender identity ideology" promoted by Comprehensive Centers.[7] The Department's press release linked directly to Rufo's posts. But the evidence cited by Rufo, and in turn the Department, has no rational connection to our performance under this grant and did not involve McREL whatsoever. Rather, the videos are from prior award cycles and at least in some instances, involved companies no longer participating in the Comprehensive Center program. Additionally, the descriptions of the videos are based on misleading editing by Rufo. These videos did not constitute fact finding related to our awards at all.

---

[6] Christopher F. Rufo (@realchrisrufo), X (Feb. 18, 2025, 4:53 PM), https://x.com/realchrisrufo/status/1891969358605451425; Christopher F. Rufo (@realchrisrufo), X (Feb. 18, 2025, 1:30 PM), https://x.com/realchrisrufo/status/1891918103682187593; Christopher F. Rufo (@realchrisrufo), X (Feb. 18, 2025, 3:39 PM), https://x.com/realchrisrufo/status/1891950617054113826; Christopher F. Rufo (@realchrisrufo), X (Feb. 18, 2025, 12:36 PM), https://x.com/realchrisrufo/status/1891904521330098647?mx=2.

[7] Press Release, *U.S. Department of Education Cancels Divisive and Wasteful Grants under the Comprehensive Centers Program* (Feb. 19, 2025).

4

ED 001266

Thus, the Department did not articulate a "rational connection between the facts found and the choice made" to terminate the Comprehensive Centers in the current grant cycle. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 3 (1983). The Department clearly "offered an explanation for its decision that runs counter to the evidence before the agency." *Am. Wild Horse Pres. Campaign*, 873 F.3d at 923. A handful of examples from prior award cycles – even if the descriptions of those projects had been accurate, which they are not – simply have no bearing on our work under this particular grant. The Department has pointed to no evidence or information concerning work under the current grant that could rationally explain a change in the agency's decision to fund the grants. As such, the Department's termination decision is arbitrary and capricious.

4.   The Termination Violates the 2024 Appropriations Act and the Constitution

The termination is also unlawful because it violates the Further Consolidated Appropriations Act of 2024 ("the 2024 Appropriations Act") and the constitutional separation of powers. In the 2024 Appropriations Act, Congress mandated that the Department spend a specific sum of money on the Comprehensive Center program, and the Department is violating that mandate by refusing to spend the money Congress appropriated.

Congress provided in the 2024 Appropriations Act that, of the $5.78 billion lump-sum appropriated for carrying out school improvement activities, "$50,000,000 shall be available to carry out Section 203 of the Educational Technical Assistance Act of 2002," which is the Comprehensive Center program. Pub. L. 118-47, 138 Stat 460, 683 (Mar. 23, 2024). This "shall be available" language represents an earmark for the Comprehensive Center program. The Government Accountability Office (GAO) has held that this language means the agency must spend the earmarked amount on the designated program and may not divert it for other purposes covered by the lump-sum appropriation. GAO, *Small Business Administration—Availability of Appropriations for Loan Modernization and Accounting System*, B-326941, at 7 (Dec. 10, 2015).

Given that the Department has terminated eighteen (18) of the twenty (20) Comprehensive Center awards and has no intent to re-award the funds, the Department will surely fail to spend the $50,000,000 mandated by Congress for this program before the funds expire on September 30, 2025. The failure to spend the full $50,000,000 before expiration violates the 2024 Appropriations Act.

The Supreme Court has made clear that an agency's failure to spend a specific sum of money mandated by Congress on a program is unlawful and will result in a court ordering the agency to spend the money. In *Train v. City of New York*, 420 U.S. 35 (1975), the Supreme Court held that President Nixon had unlawfully directed the Environmental Protection Agency not to expend the full amount of money that Congress directed be spent under a statute. The Court held that the agency lacked discretion to spend less than the full sums that Congress directed, and the Court accordingly affirmed an order directing the agency to spend those full sums. *See id.* at 42-49. Here, as in *Train*, Congress has directed the Department to spend a specific sum of money on the Comprehensive Center program, and the Department lacks discretion not to do so.

The Department's failure to spend the money appropriated by Congress for the program also violates the constitutional separation of powers. The Constitution empowers Congress to make laws, U.S. Const. art. I, § 1, and requires the President to faithfully execute those laws, *id.* art. II,

ED 001267

§ 3. Congress's powers to set the policies of the nation are at their apex when it comes to spending money, as the Constitution "exclusively grants the power of the purse to Congress, not the President. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018) (citing U.S. Const. art. I, §§ 8, 9).

From these first principles, it has been long recognized that Presidents have no inherent constitutional authority to block, amend, or subvert appropriations enacted into law by Congress. "[T]he President is without authority to thwart congressional will by canceling appropriations passed by Congress." *San Francisco*, 897 F.3d at 1231; *see also In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (explaining that "the President does not have unilateral authority to refuse to spend [appropriated] funds").

Here, the Department lacked the constitutional authority to refuse to spend the money that Congress appropriated for the Comprehensive Center program. The termination thus violates the constitutional separation of powers.

5. The Termination Violates the Impoundment Control Act

The termination likewise violates the Impoundment Control Act of 1974 (ICA). That Act sets forth limited circumstances in which an agency may "defer" or "rescind" appropriated funds, none of which are met here.

Under the ICA, a "deferral" encompasses any "withholding or delaying the obligation or expenditure of" appropriated funds, as well as "any other type of Executive action or inaction which effectively precludes the obligation or expenditure of" appropriated funds. 2 U.S.C. § 682(1). When the Executive Branch wishes to defer funds, it must send a special message to Congress detailing the money to be deferred and the reasons for deferral. 2 U.S.C. § 684(a).

There are only three permissible grounds for deferrals: (1) "to provide for contingencies;" (2) "to achieve savings made possible by or through changes in requirements or greater efficiency of operations;" or (3) "as specifically provided by law." 2 U.S.C. § 684(b). GAO has made clear that policy reasons, including efforts to ensure funds are spent consistent with the President's policy preferences, are not a proper basis for deferrals. GAO, *Office of Management and Budget—Withholding of Ukraine Security Assistance*, B-331564, at 6 (Jan. 16, 2020).

Where the Executive Branch seeks to "rescind" appropriated funds, the ICA requires that the President send a special message to Congress specifying the funds he seeks to have rescinded and the reasons for his proposal. 2 U.S.C. § 683(a).

The termination here is both an unlawful rescission and an unlawful deferral. It is a rescission because, as explained above, the Department has rescinded grants that comprise the vast majority of the $50,000,000 that Congress directed the Department to spend on the Comprehensive Center program, and the Department has no realistic way to spend those funds on the program before they expire on September 30, 2025. The Department thus has rescinded funds, without following the ICA's required procedures for proposing a rescission.

The termination is also a textbook deferral. By terminating the grant and precluding performance of the award, the Department plainly is "withholding or delaying the obligation or expenditure

of" funds. 2 U.S.C. § 682(1). If the grant had not been terminated, the appropriated funds would be promptly spent, but now their expenditure is indefinitely delayed. The Department did not follow the ICA's required procedure for notifying Congress of a deferral, nor could it have because the reason for the termination was, by the Department's own admission, policy objections and not any of the ICA's acceptable reasons for a deferral.

Nor can the termination constitute a "programmatic delay." GAO has explained that "programmatic delays occur when an agency is taking necessary steps to implement a program, but because of factors external to the program, funds temporarily go unobligated." B-331564, at 7. Programmatic delays are meant "to *advance* congressional budgetary policies by ensuring that congressional programs are administered efficiently." *City of New Haven v. United States*, 809 F.2d 900, 909 (D.C. Cir. 1987). Permissible programmatic delays do not include when the Executive Branch withholds money "on its own volition" to "ensure compliance with presidential policy prerogatives." B-331564, at 7. The delay in spending funds here was precisely to "ensure compliance with presidential policy prerogatives." B-331564, at 7, and thus is not a programmatic delay.

The only way for the Department to cure this unlawful deferral is to immediately restore the grant and its distribution of funding. Any other action, such as re-competing the award, would take substantial time and add to the very delay that is underlying this violation.

6. The Termination Violates the Due Process Clause Because It Is Based on an Executive Order That Is Unconstitutionally Vague

Finally, the Department's termination of our award clearly arose from the now-enjoined Executive Order (EO) directing agencies to terminate "DEI" grants and contracts. As a federal district court has already concluded, the termination provision of the EO is unconstitutionally vague, and the unconstitutionality of the EO renders the termination of our award unconstitutional as well.

As the Department is aware, on January 20, President Trump signed EO 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing. Among other things, the EO directed agencies to terminate "equity-related" grants or contracts, but did not define DEI or "equity-related" or otherwise provide guidance on how to apply the EO. Just days after the EO, the Department announced that, "[f]ollowing President Trump's recent Executive Orders," the Department had taken action "to eliminate harmful Diversity, Equity, and Inclusion (DEI) initiatives." The Department then made clear that it would "continue its comprehensive review of all agency programs and services to identify additional initiatives and working groups that may be advancing a divisive DEI agenda." Press Release, *U.S. Department of Education Takes Action to Eliminate DEI* (Jan. 23, 2025).

That EO has now been preliminarily enjoined. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333-ABA, ECF No. 44 (D. Md. Feb. 21, 2025) (PI Ruling). The court found that the EO's termination provision is likely unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause because the term "equity-related" created "the very real possibility of arbitrary and discriminatory enforcement," and the EO did not provide grantees and contractors sufficient notice about "what, if anything, they can do to bring their grants into

7

compliance such that they are not considered 'equity-related.'" *See* PI Ruling at 40-42. The injunction prohibits the agencies involved in the case, including the Department of Education, from terminating *any* contracts and grants based on the EO.

While the Department did not specifically cite the EO in our termination notification, the EO clearly was the driving force behind the termination. Indeed, the termination notification echoed the EO's directive and broadly asserted that our work "promote[s] or take[s] part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic." There can be no dispute that the purported role of DEI in our work was the Department's basis for ending the award.

For the same reasons that the district court found it likely that the EO is unconstitutionally vague on its face, the EO is unconstitutional as applied to the termination of our award. The termination certainly demonstrates "arbitrary enforcement." None of the services that have been planned in collaboration with Region 8 CC state education agencies have a clear relationship to DEI or the goals of diversity, equity, or inclusion. The Comprehensive Centers take on work as requested by states and their districts and schools, aligned with statutory and Department-identified priorities. Moreover, the fact that two of the twenty (20) Comprehensive Centers were not terminated, for reasons not publicly explained, shows the arbitrariness of these terminations.

The termination letter also makes clear how little notice we had of what the EO actually covers. Our termination notice and the press release accompanying it are so devoid of relevant content that it is impossible to identify what standard the Department may have used, if indeed it used any standard at all, in deciding to terminate our award based on supposed DEI concerns. To this day, we have no additional information about why our award was terminated or what work the Department believed was "promoting or taking part in DEI initiatives." The only information the Department has provided other than the non-specific language in the termination notice came through the press release in which the Department claimed that the Comprehensive Centers writ large "have been forcing radical agendas onto states and systems, including race-based discrimination and gender identity ideology."[8] The press release did not include a single example relating to our Comprehensive Center, nor could it have.

We simply do not engage in any activities that could be considered discriminatory. Rather, our slate of projects for this fiscal year include combatting chronic student absenteeism, a high-leverage need identified by Colorado Department of Education; reducing superintendent turnover in Kansas by building and scaling up an executive leadership development system; supporting the Nebraska Department of Education in its efforts to increase early childhood literacy by strengthening statewide educators' use of evidence-based practices and interventions for K–3 literacy instruction; and improving working conditions in schools to increase retention of qualified teachers, a high-leverage need identified by the North Dakota Department of Public Instruction. These projects have been suspended to the detriment of states, schools, educators, and students.

---

[8] Press Release, *U.S. Department of Education Cancels Divisive and Wasteful Grants under the Comprehensive Centers Program* (Feb. 19, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-cancels-divisive-and-wasteful-grants-under-comprehensive-centers-program.

ED 001270

Moreover, had the Department identified any activities it was concerned about, it had ample opportunity to provide that feedback and work with us to address any concerns moving forward. By design, each of our projects takes place at the request of the local community and only after approval from the Department. We were in the midst of that approval process when we received the termination notification, without any relevant concerns raised by the Department.

The termination of our award reflects the precise kind of arbitrary enforcement and lack of notice that formed the basis of the PI Ruling. The termination therefore violates the Due Process Clause.

***

For all of the reasons provided above, the Department's termination of our grant was unlawful, and the award should be immediately reinstated. Thank you for your time and consideration of this matter.

Sincerely,

Bryan Goodwin
President & Chief Executive Officer
McREL International

ED 001271



**Appendix A: Termination Letter and Grant Awards Notification (GAN) Cancellation for PR/Award # S283B240050–Region 8 (Central) Comprehensive Center**

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SECONDARY AND ELEMENTARY EDUCATION
OFFICE OF ADMINISTRATION

2/19/2025

Joe Simpson
Project Director
MCREL INTERNATIONAL
4601 DTC Boulevard, Suite 500
Denver, CO 80237

RE: Grant Award Termination

Dear Joe Simpson     :

This letter provides notice that the United States Department of Education is terminating your federal award, S283B240050     . *See* 2 C.F.R. § 200.340-43; *see also* 34 C.F.R. § 75.253.

It is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States. The Acting Secretary of Education has determined that, per the Department's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives or any other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic. Illegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education. In addition to complying with the civil rights laws, it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4); *see also* 34 C.F.R. § 75.253. Therefore, pursuant to, among other authorities, 2 C.F.R. § 200.339-43, 34 C.F.R. § 75.253, and the termination provisions in your grant award, the Department hereby terminates grant No. S283B240050     in its entirety effective 2/19/2025     .

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 001272



If you wish to object to or challenge this termination decision, you must submit information and documentation supporting your position in writing within 30 calendar days of the date of this termination notice. Objections and challenges must be sent by email and first-class mail and addressed to the component head that oversees the grantmaking unit, which will typically be the Assistant Secretary of that unit. In this case, please address your objection or challenge to Ruth Ryder, Acting Assistant Secretary; Office of Elementary and Secondary Education; 400 Maryland Ave., SW; Washington, D.C. 20202; ruth.ryder@ed.gov.

Your appeal should contain the following:
1. a copy of the written notice of termination;
2. the date you received written notice of termination;
3. a brief statement of your argument and the disputed factual, legal, or other issues;
4. the amount of funds or costs in dispute, if any; and
5. any other relevant documents.

*See id.* § 200.342.

Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g). Failure to do so will result in the Department filing a report documenting your "material failure to comply with the terms and conditions of" this award on SAM.gov and taking any other appropriate enforcement actions. *See id.* § 200.344(i).

Finally, you are reminded of your duties under your agreement and Department of Education guidance regarding retention of grant records for at least three years.

Respectfully,

Mark Washington
Deputy Assistant Secretary for Management and Planning

cc: Ruth Ryder

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

ED 001273



S283B240050



## US Department of Education
## Washington, D.C. 20202

## GRANT AWARD NOTIFICATION

| | | | |
|---|---|---|---|
| **1** | RECIPIENT NAME<br><br>McREL International<br>4601 DTC Boulevard, Suite 500<br>Denver, CO 80237 | **2** | AWARD INFORMATION<br><br>PR/AWARD NUMBER   S283B240050<br>ACTION NUMBER     2<br>ACTION TYPE      Administrative<br>AWARD TYPE     Discretionary |

| | | | |
|---|---|---|---|
| **3** | PROJECT STAFF<br><br>RECIPIENT PROJECT DIRECTOR<br>  Joe Simpson       (307) 286-9653<br>  jsimpson@mcrel.org<br>EDUCATION PROGRAM CONTACT<br>  Rebekka Meyer     (202) 453-5641<br>  rebekka.meyer@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>  G5 PAYEE HELPDESK   888-336-8930<br>  obssed@servicenowservices.com | **4** | PROJECT TITLE<br><br>84.283B<br>Region 8 Comprehensive Center (R8CC) |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Joe Simpson | Project Director | 75% |
| Katie Allen | Co-Deputy Director | 60% |
| Richard Resendez | Co-Deputy Director | 60% |

**6** AWARD PERIODS

        BUDGET PERIOD     10/01/2024 - 02/19/2025
     PERFORMANCE PERIOD   10/01/2024 - 02/19/2025

FUTURE BUDGET PERIODS

N/A

**7** AUTHORIZED FUNDING

          THIS ACTION         N/A
        BUDGET PERIOD    $2,379,571.00
     PERFORMANCE PERIOD  $2,379,571.00

**8** ADMINISTRATIVE INFORMATION

           UEI      G568H8G8UZ11
    REGULATIONS    CFR PART x
               EDGAR AS APPLICABLE
               2 CFR AS APPLICABLE
    ATTACHMENTS    N/A

**9** LEGISLATIVE AND FISCAL DATA

    AUTHORITY:           PL X X X
    PROGRAM TITLE:       COMPREHENSIVE REGIONAL ASSISTANCE CENTERS
    CFDA/SUBPROGRAM NO:  84.283B

ED 001274



S283B240050



## US Department of Education
### Washington, D.C. 20202

## GRANT AWARD NOTIFICATION

**10**

| | |
|---|---|
| PR/AWARD NUMBER: | S283B 240050 |
| RECIPIENT NAME: | McREL International |
| GRANTEE NAME: | MCREL INTERNATIONAL |
| | 4601 DTC BLVD, STE 500 |
| | DENVER, CO 80237 - 2596 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 28.7% |

TERMS AND CONDITIONS

(1) THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR THIS PROJECT ARE CHANGED TO THE DATES IN BLOCK 6. NO ADDITIONAL FUNDS ARE PROVIDED BY THIS ACTION.

(2) The grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. 200.340(a) (4); see also 34 C.F.R. 75.253.

LAVANNA WEEMS Digitally signed by LAVANNA WEEMS
Date: 2025.02.19 17:40:14 -05'00'

AUTHORIZING OFFICIAL                           DATE

Ver.1

ED 001275

McREL
I N T E R N A T I O N A L

## EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**     (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -** Unique items of information that identify this notification.

    **PR/AWARD NUMBER -** A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER -** A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE -** The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE -** The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -** This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR -** The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT -** The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT -** The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -** Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE -** The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -** This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI -** The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

14

ED 001276

**\*REGULATIONS** - Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS** - Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA** - The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS** - The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award.

**AMOUNT** - The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS** - Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER** - The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME** - The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE** - The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE** - The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL** - The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF** - The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT** - The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT** - The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT** - The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE** - If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

ED 001277

## Appendix B: Example Communication Between Region 8 CC Program Officer and Project Director

**From:** Meyer, Rebekka <rebekka.meyer@ed.gov>
**Sent:** Friday, February 21, 2025 12:29 PM
**To:** Joe Simpson <jsimpson@mcrel.org>
**Subject:** RE: G5 Notification - Administrative Action (GAN) S283B240050

Thank you for this email, Joe. To reiterate some info:

- Please ensure that your entity reads carefully the details included in the termination letter, including the option to submit in writing information and documentation supporting an objection or challenge to this termination decision within 30 calendar days of the termination notice. Please let us know if your entity has questions about the content of the letter and we will seek answers to the best of our ability.
- We will share any new information as it becomes available.

Know that I have truly enjoyed working with you for these 5+ years. I am so grateful for it.
Bekka

**From:** Joe Simpson <jsimpson@mcrel.org>
**Sent:** Thursday, February 20, 2025 12:02 PM
**To:** Meyer, Rebekka <rebekka.meyer@ed.gov>
**Subject:** Re: G5 Notification - Administrative Action (GAN) S283B240050

> **CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

Bekka,
Hello. I am confirming that I received the email regarding accessing G5. I have a GAN for Central CC. It has been great working with you. I have listed my personal contact information if you need to contact me. I will continue to have access to McREL email account until the end of February 2025. Thank you and all the best.

1009 Whispering Hills Rd.
Cheyenne, WY 82009
jsimpson1@live.com
1-307-286-9653

Joe Simpson, Director
Central Comprehensive Center
jsimpson@mcrel.org

ED 001278

McREL
INTERNATIONAL

**From:** rebekka.meyer@ed.gov <rebekka.meyer@ed.gov>
**Sent:** Wednesday, February 19, 2025 3:41 PM
**To:** Joe Simpson <jsimpson@mcrel.org>; Nancy Taylor <ntaylor@mcrel.org>; kia.weems@ed.gov <kia.weems@ed.gov>
**Cc:** rebekka.meyer@ed.gov <rebekka.meyer@ed.gov>
**Subject:** G5 Notification - Administrative Action (GAN) S283B240050

Dear Grantee:

This e-mail notifies you that your administrative action request has been reviewed and completed. You may access your electronically signed Grant Award Notification (GAN) documents for this administrative action, S283B240050 & GAN action number 2, at https://urldefense.proofpoint.com/v2/url?u=http-3A__www.g5.gov&d=DwICAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=sqywHPnXjf9z869QP3DJhAsgureCnskGlGMGoDT6C2U&m=80KDC0xcUywrcC1M2LZpId-dX3SXXpuOjo7Mj_QfQMLthV1Nxbepvu9SZlq1jd4v&s=hYRWbA_pAQ83rBtH_nO8fF0OkhsAEr1oo4PSufArFm8&e= under Grant Maintenance, Award Documents.

You will need to sign in to G5 to access your GAN. If you don't already have an account in G5, please go to the link on the top left of the home page that says "Not Registered? Sign up" and follow the instructions. To register, you will need your institution's UEI. You must also use the exact same name (no nicknames) and email address that is listed on this email. If you are a project director, or state director, select "Project Director" or "State Director" when prompted to choose a role in your profile. Please note: Only recipients of this email (the project director and certifying official or state director and authorizing official) can access the GAN in G5. If someone else at your organization requires a copy, you may print out a copy or forward the PDF to them.

If you have questions regarding accessing G5 or your GAN documents, please contact the G5 help desk at 888-336-8930. For all other questions of a programmatic or fiscal nature, please contact the ED Program Contact listed on your GAN (Box 3).

Please acknowledge receipt of this e-mail by sending a reply to the Education Program Contact listed on your GAN (Box 3).

ED 001279