**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHILD TRENDS, INCORPORATED, ET AL., <br><br>       Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, ET AL., <br><br>       Defendants. | Case No.: 8:25-cv-01154-BAH |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR ATTORNEY FEES AND COSTS

### I. INTRODUCTION

As the Court's Memorandum Opinion makes clear, this litigation presented difficult and unsettled questions at the intersection of administrative law, federal jurisdiction, and evolving statutory constraints on agency action. Plaintiffs mounted a broad challenge to the Government's termination of certain Comprehensive Center and Regional Education Laboratory grants, advancing multiple statutory, constitutional, and ultra vires theories and sought sweeping relief. The Court carefully considered these claims through a preliminary-injunction hearing and cross-dispositive motions, and ultimately granted relief only in part, while rejecting significant portions of Plaintiffs' case.

In particular, the Court denied Plaintiffs' request for preliminary injunctive relief, granted Defendants' cross-motion in part, and substantially narrowed the scope of Plaintiffs' claims and the relief available. Although Plaintiffs prevailed on their Program Claims, the Court rejected or dismissed many others. The resulting judgment reflects a nuanced resolution grounded in close

statutory interpretation and jurisdictional analysis—not a wholesale rejection of the Government's position.

Against this backdrop, Plaintiffs cannot satisfy their threshold burden under the Equal Access to Justice Act ("EAJA"). The Government's position—both before litigation and throughout these proceedings—was substantially justified. The Court's own rulings underscore that the issues presented were legally complex, fact-dependent, and the subject of ongoing and developing precedent. That the Government did not prevail on every issue does not render its position unreasonable, particularly where the Court agreed with the Government on substantial portions of the case and denied the most immediate and extraordinary relief Plaintiffs sought.

Moreover, even if Plaintiffs could establish some baseline entitlement to fees, their request is facially excessive and untethered from the limited success ultimately achieved. Plaintiffs seek compensation for work relating to claims on which they did not prevail, proceedings in which the Government succeeded, and litigation activities unnecessary to the narrow relief awarded. For these reasons, Plaintiffs' motions for attorneys' fees and costs should be denied in their entirety— or, at minimum, substantially reduced.

## II. LEGAL STANDARD

EAJA only allows an award of fees and costs against the United States if "the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). Substantial justification is not a high bar: "The test is essentially one of reasonableness." *Fed. Election Comm'n v. Pol. Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir. 1993) (quoting H.R. Rep. No. 96-1418 at 10 (1980), reprinted in 1980 U.S.C.C.A.N 4984, 4989). As explained in the House Report accompanying the relevant bill:

> The [substantial justification] standard . . . should not be read to raise a presumption
> that the government position was not substantially justified, simply because it lost

the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.

H. R. Rep. No. 96-1418 at 11, 1980 U.S.C.C.A.N. 4984, 4990. Rather, "substantially justified" simply means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

EAJA thus restricts fee awards to a fraction of cases in which the non-government party prevails. This limitation aligns with EAJA's purposes, which "differ substantially from other feeshifting statutes like [42 U.S.C.] § 1988." *SEC v. Price Waterhouse*, 41 F.3d 805, 809 (2d Cir. 1994). In contrast to § 1988, which is focused on allowing needy individuals to bring actions challenging civil rights violations, EAJA was "designed to compensate victims of unjustified litigation by the Government from some of the burdensome expenses and costs to which they were subjected by the Government's taking of unreasonable positions." *Id.* Congress limited EAJA awards to cases in which the Government's position was not "substantially justified" because its aim was "to furnish relief from. . . governmental litigation abuse." *Id.*; *see also Anthony v. Sullivan*, 982 F.2d 586, 588 (D.C. Cir. 1993) (characterizing EAJA as "somewhat stingier" than the fee provisions of Title VII).

A finding that the Government's position was not substantially justified is a threshold condition for an award of fees and costs under EAJA. *Comm'r, INS v. Jean*, 496 U.S. 154, 160 (1990). As with the question of whether the non-government party prevailed, the Court determines whether the Government's position was substantially justified by looking at the case as a whole. *See id.* at 161-62; *see also Cohen v. Bowen*, 837 F.2d 582, 585 (2d Cir. 1988) ("In assessing the reasonableness of the Government's position, the court must examine the full course of litigation."); *Senville v. Madison*, 331 F. App'x 848, 850 (2d Cir. 2009) (summary order) (affirming denial of EAJA award and noting with approval that the district court had "considered

the agency's prelitigation conduct and its litigation position 'overall,' including its stance with regard to the issues it had won before the district court, in concluding that the agency's position had been substantially justified").

Even if an EAJA movant establishes that it prevailed and the Government's position was not substantially justified, the movant is only entitled fees that are "reasonable." 28 U.S.C. § 2412(d)(2)(A); *see also* 28 U.S.C. § 1920 (allowing costs for transcripts and copies of materials only if "necessarily obtained for use in the case"). In determining whether the attorney fees sought by a plaintiff are reasonable, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see id.* 433 n.7 (noting that this standard is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"). When the hours expended by an attorney cannot be divided easily on a claim-by-claim basis— such as when the case presented only a single claim or the claims involved a common core of facts or were based on related legal theories—"the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

## III. ARGUMENT

### A. Plaintiffs Are Not Entitled to Fees and Costs Under EAJA Because the Government's Position Was Substantially Justified.

The Government lost on *some* of the claims in this case. It does not dispute that Plaintiffs are a prevailing party, and it recognizes that key arguments it advanced were ultimately rejected by this Court. But the question on substantial justification is not whether the Government won or lost, but merely whether the Government's position was reasonable. *See Pierce*, 487 U.S. at 565. Courts have found that standard is met where, as here, a determinative issue was "far from settled

4

law," *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005), and where the Government's position, though ultimately determined to be erroneous, was based on a complicated factual scenario, *see, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 64 F. Supp. 2d 55, 58 (D. Conn. 1999). *See also Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) ("Courts evaluating substantial justification must instead analyze why the government's position failed in court: if, for example, the government lost because it vainly pressed a position 'flatly at odds with the controlling case law' . . . that is one thing; quite another if the government lost because an unsettled question was resolved unfavorably." (internal citation omitted)).

Here, Plaintiffs are not entitled to costs and attorneys' fees because both the pre-litigation conduct that formed the basis for Plaintiffs' claims—the Government's termination of certain Comprehensive Center grants and RELs—and the Government's litigation position were substantially justified. With respect to the Government's pre-litigation position, the agency action challenged in this suit occurred when the Department terminated certain Comprehensive Center and REL grant awards. While the Government's authority to terminate these awards was ultimately found to be limited, based on certain unique statutory provisions applicable to the Comprehensive Center and REL programs, Agencies generally operate with significant discretion in this area. The contracts themselves contemplate a scenario where the Government may terminate the awards. It was not unreasonable for the Government to take the position that it could legally exercise its discretion to terminate the awards to address a change in Agency priorities.

Regarding the litigation position, Courts have found that the Government acted reasonably where, as in this litigation, a determinative issue was "far from settled law," *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005). Courts also consider whether, as here, the Government's position was based on a complicated factual scenario, *see, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 64 F. Supp.

5

2d 55, 58 (D. Conn. 1999). Relevant here, on April 4, 2025, the Supreme Court stayed a district court order that would have enjoined "the Government from terminating various education-related grants" finding that "the Government [was] likely to succeed in showing that the District Court lacked jurisdiction" to issue the order. *Dep't of Educ. v. California*, 604 U.S. 650, 650–51 (2025). On April 7, 2025, Plaintiffs file the instant complaint, challenging Defendant's termination of their education-related grants. The fact that the Government approached this litigation on the heels of prevailing in *California* is significant, as it indicates that the Government's legal arguments were "far from unreasonable." *Vacchio*, 404 F.3d at 675; *see, e.g.*, *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 787 (2d Cir. 1999) ("The issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation.").

The uncertainty of the legal standards applicable to the issues presented by the present case are emphasized by two recent decisions from the Fourth Circuit - *The Sustainability Institute v. Trump* and *Solutions in Hometown Connections v. Noem* - both of which found the Government conduct at issue to be substantially similar to, and thus, controlled by *California*. *See The Sustainability Institute v. Trump,* 2026 WL 157120 (4th Cir. Jan. 21, 2026); *Solutions in Hometown Connections v. Noem*, 2026 WL 179590 (4th Cir. Jan. 23, 2026). In *Solutions*, the Fourth Circuit upheld a decision from the United States District Court for the District of Maryland, which had denied a preliminary injunction request brought by federal grantees challenging the freezing and termination of their grants. In so doing, the Fourth Circuit upheld the district court's analysis that plaintiffs were not likely to succeed on the merits regarding jurisdiction over their APA claims. 2026 WL 157120. Similarly, the Fourth Circuit in *Sustainability Institute* found that the district court lacked jurisdiction to adjudicate Plaintiffs' APA claims challenging the freezing or

termination of their grants and order enforcement of those grants. 2026 WL 179590. While the Fourth Circuit's *Sustainability Institute* decision was premised on the "termination of Plaintiffs' particular grants—not the termination of entire programs" – this decision re-emphasizes the factual and legal complexity that is still unfolding in this Circuit with regard to the legal authority of the Government to terminate grant awards that no longer effectuate Department's priorities.

While the Government did not ultimately prevail in some aspects of this litigation, the Fourth Circuit decisions noted above indicate that the Government's position had a reasonable basis in law and fact—that is, a reasonable person could find it correct. Here, "there were reasonable arguments on both sides" and this is all that is needed to merit denial of attorneys' fees. *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022). Furthermore, Plaintiffs received more than was ultimately ordered by this Court, in that the Government chose *on its own accord* to reinstate their underlying grants and contracts as part of its implementation of the terms of the Court's judgement. Plaintiffs should not be awarded the further windfall of attorneys' fees, when the Government's pre-litigation and litigation conduct in this case was substantially justified.

## B. Plaintiffs are not entitled to increased rates beyond a cost-of-living adjustment.

For the reasons provided above, Plaintiffs are not entitled to attorney's fees at all. But even if the Court concludes that some fee award is appropriate, Plaintiffs' requested fee award of $220,612.00 is excessive and should be significantly reduced. As a preliminary matter, the Court should reject any attempts by Plaintiffs to collect enhanced billing rates under the "special factor" test. Under § 2412(d), hour rates are limited to $125, plus a cost-of-living adjustment. Plaintiffs' counsel asserts that all three attorneys involved in this litigation are entitled to enhanced rates. ECF No. 78-1 at 12.

On its face, the EAJA gives only one example of a special factor in favor of enhanced rates: "the limited availability of qualified attorneys." 28 U.S.C. § 2412(d)(2)(A)(ii). The Supreme Court has narrowly construed the EAJA's "special factor" to exclude such considerations as "novelty and difficulty of issues," "the undesirability of the case," "the work and ability of counsel," "the results obtained," "the contingent nature of the fee" or other reasons that only go to "why market rates are what they are." 487 U.S. at 573. And while the Supreme Court has, conversely, found that "special factors" may exist where there is an identifiable practice specialty, the Fourth Circuit has rejected fee enhancement where petitioning attorneys' expertise relevant to the success of their claims is "of the type that is possessed or easily acquired by reasonably competent attorneys." *Hyatt v. Barnhart*, 315 F.3d 239, 252 (4th Cir. 2002) ("[p]ractice specialties in the administrative arena will all involve this ability, which of course will be unique to the specialty but still acquired from the practice of it.)

As explained above, this litigation involved an intermix of evolving areas of law regarding the Tucker Act and the underlying source of rights at inquiry. In seeking to avoid these matters, Plaintiffs' counsel argues for a narrowing of the scope of this litigation that would "not link the special skills possessed by the attorneys to the needs of this particular case." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1940353, at *5 (D. Md. July 15, 2025). Specifically, Plaintiffs attempt to make this case about nothing more than "black letter appropriations law" is unpersuasive. The portion of this case related to appropriations law was not the core of the litigated issues, nor was it the primary basis for the Court's order granting summary judgment on the Program Claims. No. 61 at 23-32. The decision to grant relief on the Program Claims was largely based on the authorizing statutes. Thus, if the Court awards Plaintiffs' counsel any amount in fees, these rates should be at the very least reduced to the cost-of-living adjusted statutory EAJA rate. Doing so

would reduce the maximum award to $137,322.06. In addition, any fees awarded to Plaintiffs should be further reduced for the reasons addressed below.

### C. Special Circumstances Render a Fee Award for Work on the Motion for Preliminary Injunction Unjust.

To reiterate, the EAJA provides, in relevant part, that a court "shall award to a prevailing party… other fees and other expenses…incurred by that party in any civil action…unless the court finds…that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  The Court should not award attorney's fees to Plaintiffs, and certainly not at the full amount requested by Plaintiffs, because "special circumstances" render an award of fees related to the litigation over Plaintiffs' Motion for Preliminary Injunction "unjust."  *See Nken v. Holder*, 385 Fed. Appx. 299, 302–03 (4th Cir. 2010) (special circumstances precluded award of attorney fees and expenses under EAJA to alien in connection with his motion for stay of removal during a pending appeal). Consistent with the discretion afforded this Court by the plain language of the statute, the legislative history of the EAJA recognizes that the "special circumstances" clause can serve two purposes. Specifically,

> [t]his 'safety valve' helps to ensure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H.R. Rep. No. 96–1418, at 11 (1980), 1980 U.S.C.C.A.N. 4984, at 4990.  In the present case, an award of fees related to Plaintiffs' PI Motion would punish the Government for advancing a plausible legal argument in good faith. When the Government opposed the PI motion, it did so on the basis of established precedent, and it prevailed. The Government took a position that was clearly supported by controlling law, and a fee award relating to that portion of the litigation would

therefore not serve the purposes of the EAJA. The Government asks this Court to exercise its equitable discretion to deny an award of fees and expenses related to litigation over the PI Motion.

### D. Plaintiffs' Fee Application is Excessive, Warranting an Across-The-Board Percentage Reduction for Several Reasons.

After eliminating the "special factor" bump Plaintiffs seek, the Court should also apply at least a 75% reduction in any award to Plaintiffs because Plaintiffs seek reimbursement for unsuccessful work, for countless time entries that lack the requisite level of information and detail, and for excessive and duplicative work. Generally, the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Bennett v. Castro*, 74 F. Supp. 3d 382, 397 (D.D.C. 2014) (quoting *Hensley*, 461 U.S. 424, 433 (1983)). For a fee applicant to meet this burden, the applicant's "supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 970 (D.C. Cir. 2004); *see Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley*, 461 U.S. at 437 n.12) (because "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours," Plaintiffs' counsel was obligated to "maintain[] records" with "sufficient particularity" to allow the Court to "assess the time claimed for each activity."). To this end, "hours that were not reasonably expended" are to be "exclude[d] from [the] fee calculation." *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94–1011, at 6 (1976)).

This Court has "substantial discretion in fixing the amount of an EAJA award." *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 163 (1990). This includes the accepted practice of applying a "fixed reduction" where a "large number of entries" are deficient. *Role Models Am.,* 353 F.3d at 973 (reducing fee award by 50% after finding numerous and serious deficiencies,

including "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries"); *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (holding that district court did not abuse its discretion in reducing fees 40 percent).

### i. The hours claimed by Plaintiffs lack sufficient support, are excessive, and are otherwise unreasonable.

The Court should decline to award attorneys' fees that lack proper support or documentation. Plaintiffs' fee requests include numerous entries that are insufficiently documented. For example, the 5/14/2025, 5/18/2025 and 5/19/2025 entries by one attorney to "Prepare for hearing" all "fall on the 'more general' side of the line, warranting some consideration in terms of a percentage-based reduction." ECF No. 78-2 at 12. *See J.O.P. v. U.S. Dep't of Homeland Sec., at *6; Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Additionally, as demonstrated by the 5/21/2025 claims by Mr. Jacobson and Ms. Snow, both for drafting proposed orders, the duplicative nature of many of Plaintiffs' fee entries warrants a further reduction. *Id.* at 12, 32. This Court has, under similar circumstances, reduced fees claimed for "intra-office conferences, moot courts, hearing preparation, and the like, billed by multiple attorneys." *See Burley v. Balt. City Police Dep't*, 2020 WL 1984906, at *3 (D. Md. Apr. 27, 2020) (explaining that "it is simply unfair to permit unfettered billing by multiple attorneys, conferring regularly about various issues, to be billed to an opponent").

There is no reason that Plaintiffs could not have documented their time in a manner that would provide the Government and Court with an ability to assess utility and reasonableness. And in some instances, Plaintiffs did record their hours adequately and with sufficient detail. For example, on October 31, 2025 one attorney included an entry for "Answer client questions about

declarations and finalize CT declaration (.14), edit billing records (.37), edit attorney declaration (.36)". *Id.* at 37. The juxtaposition between these acceptable entries (all of which appear to occur once Plaintiffs' counsel began researching the EAJA) and the numerous, unacceptably vague entries submitted by Plaintiffs – such as "prepare for argument" and "draft SJ brief" and "review related filing" – makes clear the severity of the billing issues presented in many of Plaintiffs' fee records. Plaintiffs' counsel should not be entitled to recover EAJA fees where they failed, in numerous instances, to take the time necessary to write billing entries reflecting the scope and nature of their work.

### ii.    Post Judgment Activities That Were Not Necessary for the Litigation Should Be Subtracted from a Fee Award.

The Government also requests that the Court remove Plaintiffs' fee requests that are associated with post-judgment activities. Plaintiffs' counsel seeks to collect fees for work that was not needed to advance any litigation objective. For example, on September 2, 2025, there is a fee request listing "correspondence with clients re carryover funds…"; on September 9, 2025, there is a fee for "Review FAQ re RELs"; and on September 23, 2025, there is a fee for "correspondence with clients" regarding the case and "potential shutdown". *Id.* at 26, 27. While such activities may have been appreciated by their clients, "there is a point at which thorough and diligent litigation efforts become overkill[.]" *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991).

### iii.    Plaintiffs' counsel inappropriately seek reimbursement for some clerical tasks.

Plaintiffs' counsel also seeks reimbursement for clerical tasks and general outreach, which should be factored into the Court's percentage reduction. An EAJA applicant should not recover for clerical tasks (filing, copying, document organization, etc.) that should have been subsumed

into overhead. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). As an example, on May 12 and May 15, one attorney includes "file response" amongst their billed activities. Any award of attorneys' fees should be reduced accordingly to account for these clerical entries.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' EAJA motion should be denied.

Dated: February 12, 2026

Respectfully submitted,

Kelly O. Hayes
United States Attorney

_____/s/_____

Tianna Bethune
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore. Maryland 21201
410-209-4922
Tianna.Bethune@usdoj.gov
*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on February 12, 2026, I caused a copy of the foregoing to be electronically served upon all parties receiving CM/ECF notices in this case.

*/s/*
Tianna Bethune
Assistant United States Attorney
